[No. 14596.   Department Two. — August 1, 1892.]

F. WIEDWALD, RESPONDENT, v. JAMES H. DODSON ET AL., TRUSTEES, ETC., OF THE CITY OF SAN PEDRO, APPELLANTS.

MUNICIPAL CORPORATIONS — CHANGE OF BOUNDARIES — CONSTRUCTION OF STATUTE — UNREASONABLE EXCLUSION OF TERRITORY — SPECIAL ELECTION — MANDAMUS. — The act of March 19, 1889 (Stats. 1889, p. 356), providing for the changing of the boundaries of cities and municipal corporations, and the exclusion of territory therefrom, was intended to provide for an ordinary reasonable change of the boundaries of a city, and not a means by which a city might be practically disincorporated; and where it appears, in a proceeding thereunder, that the extent and proportion of the population sought to be excluded from a city would leave less than one half the population necessary to form a municipal corporation, the right of an elector and property owner to a writ of mandate to compel the trustees of the city to call a special election, for the purpose of submitting the question of the exclusion of the territory to the electors, will be denied.

ID. — MANDAMUS IN DISCRETION OF COURT — VIOLATION OF SPIRIT AND PURPOSE OF LAW. — The writ of mandamus is not wholly a writ of right, but lies to a considerable extent within the sound discretion of the court where the application is made, and should not issue to compel a technical compliance with the letter of the law, in violation of its plain intent and spirit, nor to wrest a statute from its true purpose.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

S. M. White, and Chapman & Hendrick, for Appellants.

The granting or refusing of writs of mandamus is largely in the discretion of the court. (High on Extraordinary Legal Remedies, sec. 9; Spring Valley Water

*Works* v. *San Francisco,* 52 Cal. 117; *Spring Valley Water Works* v. *Bryant,* 52 Cal. 140.)  Now, it is shown that the holding of this election and the exclusion of this territory would take out all the members of the board of trustees except one, and would practically destroy the corporation.  In such cases it is in the discretion of the court to refuse the writ, because the parties affected by such a judgment have no opportunity to be heard.  (See High on Extraordinary Legal Remedies, sec. 9, note 2, p. 12.)  The writ should not be granted to compel a technical compliance with the strict letter of the law in disregard of its real spirit.  (High on Extraordinary Legal Remedies, sec. 9, and notes; *State* v. *Commissioners,* 26 Kan. 419.)

*Wells, Monroe & Lee,* for Respondent.

The discretion confided to the court in the matter of *mandamus* is not arbitrary, but must be exercised under the established rules of law, and if, under those rules, the party is entitled to the writ, it must be issued. (*Brooke* v. *Widdecombe,* 39 Md. 386; High on Extraordinary Legal Remedies, 2d ed., sec. 9.)

McFARLAND, J. — The respondent filed a petition in the superior court, praying for a writ of mandate to compel the appellants, as trustees of the city of San Pedro, to call a special election, and submit to the electors of said city the question of excluding therefrom certain territory described in the petition.  After a trial, the court rendered judgment granting the writ, and the trustees appeal from the judgment.

The respondent bases the right to maintain this proceeding upon the fact that he is an elector and tax-payer and real estate owner within the city.

The petition for a special election, involved in the case at bar, was filed March 10, 1891; and it appears from the findings that a prior similar petition had been filed on December 11, 1890 (involving exactly the same territory); that said prior petition had been granted by

the trustees, and an election under it had been held on January 12, 1891; that one Anderson had filed a petition in said superior court for a writ of mandate to compel the trustees to declare the result of such election, and to certify to the secretary of state that such result was in favor of the exclusion of such territory; and that said petition for such writ of mandate is still pending and undetermined.

It further appears from the findings that the territory described in the petition to the trustees (in the case at bar) "is nearly the whole of the said city of San Pedro, and that if the said territory should be excluded it would carry with it nearly or quite nine tenths of the population of said city, and four members of the board of trustees, and that the whole number of voters left in the city of San Pedro, if the said territory should be excluded, would not exceed thirty." It appears that at the last municipal election, held in April, 1890, there were 258 votes cast, and that there are five trustees of said city.

Passing other points made by appellants, it is clear that the judgment must be reversed upon the finding as to the extent and the proportion of the population which would be excluded from the city if the judgment were affirmed. The proceeding before the board of trustees was under the statute approved March 19, 1889, entitled " An act to provide for changing the boundaries of cities and municipal corporations, and to exclude territory therefrom." (Stats. 1889, p. 356.) This act was re-enacted, inadvertently perhaps, on March 20, 1889. (Stats. 1889, p. 433.) The act was evidenty intended to provide for an ordinary, reasonable change of the boundaries of a city; but it was clearly not intended as a means by which a city might be practically disincorporated. It is based upon the theory that the city whose boundaries are to be changed shall continue its existence, and provides for many things to be done by the city after the change; as, for instance, to levy taxes upon the excluded territory. But by the election which the trustees are

compelled by the judgment in the case at bar to order, if the vote should be in the affirmative there would be excluded from the city " nearly the whole" of its territory, nine tenths of the population, and four fifths of its trustees; and the whole number of voters left would " not exceed thirty." Adding to these thirty voters as many resident non-voters as could be reasonably estimated, there would not be nearly one half the population necessary to form a municipal corporation of the lowest class. This would be, not to change the boundaries, but to practically disincorporate the city. To interpret the statute as contemplating such result would be to violate the maxim, *Qui hæret in litera hæret in cortice.* Counsel for respondent say that it would be difficult to establish a line so as to distinguish the extent of territory and amount of population that may be excluded. That is, no doubt, true; but if we imagine such line drawn with the utmost liberality, we shall still find the case at bar on the wrong side of it. In applying the principle, each case must be determined upon its own facts.

The learned judge of the court below would, perhaps, have adopted these views, if he had not felt constrained by the opinion, expressed in his conclusions of law, that " the court has no discretion to refuse to issue the writ." In this view we think that he was mistaken. We think that the correct doctrine is expressed in High on Extraordinary Legal Remedies, sec. 9, where, speaking of *mandamus*, it is said that " the exercise of the jurisdiction rests, to a considerable extent, in the sound discretion of the court "; and that " cases may therefore arise where the applicant for relief has an undoubted legal right, for which *mandamus* is the appropriate remedy, but where the court may, in the exercise of a wise discretion, still refuse the relief." (See also *Spring Valley Water Works* v. *San Francisco*, 52 Cal. 117; *Spring Valley Water Works* v. *Bryant*, 52 Cal. 140.) And in the second edition of the work, in said section 9, and notes, it is said that the writ should not issue to compel a compliance with the letter against the spirit of the law. In *State* v. *Comm'rs*

*of Phillips County*, 26 Kan. 419, while the facts were somewhat different from those in the case at bar, the supreme court of Kansas stated the rule as follows: "The writ of *mandamus* is not wholly a writ of right, but lies, to a considerable extent, within the sound judicial discretion of the court where the application is made (citing authorities); and no court should allow a writ of *mandamus* to compel a technical compliance with the letter of the law, where such compliance will violate the spirit of the law." The case at bar comes within the principle just quoted; it is an attempt to compel a compliance with the letter of the law against its plain intent and spirit. The writ of mandate should not be used to wrongfully wrest a statute from its true purpose.

The judgment is reversed.

DE HAVEN, J., and SHARPSTEIN, J., concurred.