[Civ. No. 12229.   First Dist., Div. Two.   Jan. 8, 1943.]

HOWARD A. NEWPORT, Appellant, v. A. CAMINETTI, JR., as Insurance Commissioner, etc., Respondent.

J. W. Ehrlich, Roy A. Sharff and Alfred M. Miller for Appellant.

Earl Warren, Attorney General, and Neil Cunningham, Deputy Attorney General, for Respondent.

SPENCE, J., Acting P. J.—Petitioner sought a writ of mandate in the superior court to compel the respondent commissioner to grant petitioner's "applications for licenses as bail permittee and bail agent" filed with respondent in July, 1941. It was stipulated by the parties that a transcript of the entire proceedings before the respondent should be attached to and made a part of the petition filed in the superior court. Respondent interposed a demurrer to said petition, which demurrer was sustained without leave to amend. Judgment was thereupon entered denying the writ of mandate and from said judgment, petitioner appeals.

As this proceeding in mandamus resulted from the denial by respondent of the applications of petitioner, it is apparently conceded that the sole question presented to the trial court on the hearing of the demurrer to the petition was whether the transcript of the proceedings before the respondent, which was made a part of the petition, showed that the respondent had abused his discretion in denying the applications. (*McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P. 2d 1035, 123 A.L.R. 1205].) We are therefore of the opinion that if the trial court properly concluded that said transcript showed no such abuse of discretion, the action of the trial court in sustaining the demurrer without leave to amend and in entering its judgment denying the writ of mandate should be affirmed.

It appears from said transcript that after an extensive hearing, respondent made numerous findings in support of his orders denying petitioner's applications. Our attention is directed to two main findings with respect to each application as follows:

"1. The applicant is not a fit person to hold the license herein applied for. The applicant is not a proper person to hold the license herein applied for.

"2. The purpose of obtaining the license applied for is to evade and prevent the enforcement of the insurance laws of the State of California."

The first of said findings was made pursuant to the provisions of section 1805 of the Insurance Code as amended in 1939. (Stats. 1939, chap. 361, § 14.) As so amended, that section provides in part, "The commissioner may decline to issue a bail license until he is satisfied that: . . . (h) That the applicant is a fit and proper person to hold the license applied for."

The second of said findings was made pursuant to the provisions of section 1821 of the Insurance Code, which was added in 1939 (Stats. 1939, chap. 361, § 27), and pursuant to other sections thereby made applicable by reference. That section reads, "A license shall not be refused by the commissioner without providing an opportunity to the applicant within sixty days to be heard and produce evidence in support of his application. The provisions of sections 1730 to 1736, inclusive, are applicable to persons licensed under this chapter and the words 'insurance agent' used in those sections include persons licensed under this chapter." Section 1731 provides for the suspension or revocation of licenses if the commissioner determines that " . . . (c) the purpose of obtaining such license was to evade or prevent the enforcement of any provision of this code or other insurance laws." Section 1732 provides that " . . . the commissioner may refuse to grant any such license unless the applicant makes a showing satisfactory to him that none of the facts specified in section 1731 exist in respect to the applicant or its members."

Petitioner first contends that even if the second abovementioned finding was supported by the evidence, it "was not a ground under the law for the refusal of the licenses." In other words, petitioner contends that even if the evidence showed that his purpose in obtaining the licenses was to evade and prevent the enforcement of the insurance laws, the commissioner was not justified in denying his applications. This is a startling contention and we believe it to be wholly without merit. Petitioner argues that as section 1821 provides that the provisions of sections 1730 to 1736, inclusive, are applicable to persons "licensed under this chapter," it does not cover persons applying for licenses thereunder. This argument is based upon the word "licensed" as used therein and the fact that section 1731 refers to suspension and revocation of licenses. But this argument wholly ignores the provisions of section 1732, above quoted, which are made applicable by the provisions of section 1821, and which section 1732 relates only to persons applying for licenses and, in so doing, refers back to the provisions of section 1731. The only logical conclusion to be drawn is that the word "licensed," as used in section 1821, was intended to cover both persons already licensed and persons applying to be licensed under that chapter. Furthermore, regardless of any

specific statutory provisions on the particular subject, we are of the opinion that if the evidence showed that an applicant's purpose in obtaining a license was to evade or prevent the enforcement of the insurance laws, the commissioner would be entirely justified in finding from such evidence that the applicant was not a "fit and proper person to hold the license applied for," and in denying the application upon that ground. (Ins. Code, § 1805, subd. h.) As above indicated, the commissioner made such a finding in the present case and we believe that the two main findings are closely related.

Petitioner further contends that the denial of the applications was based upon findings "made upon suspicion and not reasonably supported by the evidence." In considering this contention, it is appropriate to refer to the applicable code sections and the authorities before considering the evidence.

Section 1805 of the Insurance Code, which sets forth several conditions, commences with the wording, "The commissioner may decline to issue a bail license until he is satisfied that: . . . ." Section 1732 of said code provides that " . . . the commissioner may refuse to grant any such license unless the applicant makes a showing satisfactory to him that none of the facts specified in section 1731 exist in respect to the applicant or its members."

The meaning and effect of such provisions was considered in *McDonough* v. *Goodcell,* 13 Cal.2d 741, 742 [91 P.2d 1035, 123 A.L.R. 1205], where the court reviewed the authorities under similar statutes. On page 747, the court quoted with approval from *Riley* v. *Chambers,* 181 Cal. 589 [185 P. 855, 8 A.L.R. 418] and on page 748, from *In re Halck,* 215 Cal. 500 [11 P.2d 389]. In the latter case, the court said that a denial of a license was justified " . . . if, on the showing made, there is a reasonable ground for the conclusion" that the applicant does not meet the conditions set forth in the statute. In the former case, the court used language of similar import. The question thus presented by petitioner's contention is whether, upon the showing made by petitioner, there was reasonable ground for the conclusion of the commissioner as expressed in the two main findings above set forth.

As we view the record, said findings were based upon the commissioner's conclusion that the purpose of the petitioner

in seeking the licenses was to enable petitioner to act as a "dummy" for Peter McDonough and Thomas McDonough whose several applications for licenses had been previously denied. In other words, it was apparently the commissioner's conclusion that the purpose was to continue for and on behalf of the McDonoughs, who were unlicensed persons, the business formerly conducted by them at 700 Kearny Street in San Francisco.

The McDonoughs had been engaged in the bail bond business for many years at said address. A petition for a writ of mandate to compel the commissioner to issue a license to them was denied in *McDonough* v. *Goodcell*, 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205]. The last of the several applications of the McDonoughs for a license was denied by the commissioner on May 6, 1941. Their lease on the premises at 700 Kearny Street was due to expire on July 31, 1941.

It appears that the McDonoughs were quite wealthy, having an annual income of $30,000 per year from real estate holdings and securities. On the other hand, it appears that the petitioner had been employed by the McDonoughs as a night clerk for sixteen years with an income of $50 per week during most of that period. During the last year of that period, his income had been reduced to $35 per week. Petitioner had been married for about 25 years to a niece of the McDonoughs and had supported his wife and three children on said income, supplemented by gifts from Peter McDonough. The assets of petitioner and his wife, according to the testimony of petitioner at the hearing, consisted of the family home and about $8,500 in currency in a safe-deposit box. No reason for keeping this money in a safe-deposit box rather than in a savings account was given. The testimony showed that Peter McDonough had made a gift to petitioner's wife of $1,000 every Christmas for many years, had given her the lot on which petitioner had built the family home, had given her and her children additional gifts each month, the last monthly gift to her amounting to $150, and that he intended to continue these gifts regardless of the occupation of the petitioner. It was conceded by petitioner that some of the above mentioned assets of himself and his wife had been received from Peter McDonough.

Following the denial of the McDonoughs' application for

a license in May, 1941, petitioner made arrangements to rent temporarily the premises at 700 Kearny Street after the expiration of the McDonough lease on July 31, 1941, and to obtain a lease thereon at the same monthly rental as had been paid by the McDonoughs in the event that he obtained a license. He also had the utility bills for 700 Kearny Street charged to his name. His applications to obtain the licenses here involved followed.

Upon the hearing, both petitioner and Peter McDonough denied that the McDonoughs were to have any interest in the business in the event that the licenses were granted to petitioner. It appeared, however, that petitioner proposed to conduct the business at the same establishment as had been previously occupied by the McDonoughs; that he proposed to have associated with him at that establishment some of the same persons who had been associated in the business with the McDonoughs for many years including George Fleming and Harry Rice; that petitioner proposed to run the business "just like I would when I was on the night shift down there"; that Peter McDonough had offered to give petitioner certain necessary furniture and equipment located in said establishment provided petitioner was successful in obtaining a license; that petitioner approached Peter McDonough before making any application for a license and obtained his approval; and that the sign "McDonough-Bail" was still permitted to remain over the door of the establishment at the time of the hearing in September, 1941.

Considering all of the foregoing facts, including the close business and family relationship between petitioner and the McDonoughs over a long period of years, the strong desire of the McDonoughs to continue their business as evidenced by their several unsuccessful efforts to obtain a license, the obvious ability of the McDonoughs to finance such business as contrasted with the very limited ability of petitioner to finance the same, the unusual financial aid admittedly given by Peter McDonough to petitioner's wife, the admitted source of at least part of the limited assets of petitioner and his wife, the unusual method employed by them in keeping their money in a safe deposit box rather than in a savings account, the proposal of petitioner to conduct the business at the same place using substantially the same personnel, substantially the same furniture and equipment and substantially the same business methods as had the McDonoughs, and the prompt

action of petitioner, after admittedly seeking and obtaining the McDonoughs' approval in taking over the premises at 700 Kearny Street and applying for a license following the denial of the final application of the McDonoughs in May, 1941, we are of the opinion that there was reasonable ground for the commissioner's above mentioned conclusion as to the purpose of petitioner in applying for the licenses and that such purpose was one to evade the enforcement of the insurance laws. (Ins. Code, §§ 1800, et seq.) We therefore find no merit in petitioner's last mentioned contention.

We conclude that the trial court properly determined that the transcript showed no abuse of discretion and properly sustained the demurrer to the petition without leave to amend.

The judgment is affirmed.

Sturtevant, J., and Dooling, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 8, 1943.