[L. A. No. 18567.   In Bank.   May 3, 1943.]

ALBERT ABRAHAM SIPPER, Appellant, v. CLARENCE URBAN, as Real Estate Commissioner, etc., Respondent.

Silverman & Hindin and Maurice J. Hindin for Appellant.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

SHENK, J.—The petitioner filed in the superior court his application for the writ of mandamus to compel the respondent Real Estate Commissioner to vacate an order dated September 19, 1941, suspending his license from September 29, 1941, to and including October 9, 1941, or a period of ten days, and to set aside the findings on which the order of suspension was based. The record does not disclose the date of the filing of the original petition for the writ, but it is conceded that it was filed after the period of suspension had expired and the license of the petitioner presumably had been reinstated.

On October 23, 1941, the commissioner issued an order directing the petitioner to show cause why his license should not be suspended or revoked on the ground that he had engaged in business as a real estate operator during the ten day period in violation of the order of suspension of Septem-

ber 19, 1941. The hearing on the order to show cause was set for November 5, 1941. On January 2, 1942, the petitioner filed an amended petition for the writ wherein he sought the relief prayed for in the original petition and also prayed that the commissioner be directed to dismiss the proceedings commenced by him to further suspend or to revoke the license. By stipulation the hearing set for November 5, 1941, on the order to show cause was continued to a date to be fixed on motion of the commissioner.

In addition to the foregoing the petitioner alleged that the findings and order of the commissioner were not based on any "sufficient, adequate or competent evidence to support" them; that the order was void, and that the commissioner exceeded his authority in making it. It is then alleged that there was filed concurrently with the petition a certified transcript of the proceedings and hearing before the commissioner; that said transcript was referred to and made a part of the petition without prejudice to the petitioner's right to a re-examination of the evidence and the witnesses in court.

The petition together with the record of the proceedings before the commissioner, was presented to the trial court on the application for an alternative writ. The trial court examined the allegations of the petition and the record of the proceedings taken before the commissioner and concluded that the same did not present facts justifying the issuance of an alternative writ and entered an order of denial. The appeal is from that order as an order finally disposing of the controversy in the trial court.

The record of the evidence before the commissioner, which as indicated was submitted as a part of the petition, shows the following:

The petitioner was a licensed real estate broker operating in Los Angeles County. He was cited to appear before the Real Estate Commissioner on August 21, 1941, to answer charges of conduct which, if true, would require the suspension or revocation of his license. After a hearing, findings were made by the commissioner to the effect that the petitioner had sold a parcel of real property pursuant to the owner's authorization, but for about $200 more than the authorized price, and had secured that additional amount in a second deed of trust in his own favor, without the knowledge or consent of the owner, and to accomplish his purpose drafted two different sets of instructions to the escrow officer. The commissioner's

conclusion was that the petitioner was guilty of conduct which constituted dishonest dealing, and that his license should be suspended for ten days from the effective date of the order, as above stated.

On the appeal the petitioner contends that the trial court erred to his prejudice in not according him a hearing on his petition. In this the petitioner may not be sustained. In his application for a writ it was incumbent upon him to state a prima facie case entitling him to relief. This would be true on any theory that may be advanced for a court inquiry into the lawfulness of the action of the commissioner. The petitioner is not entitled to the writ as a matter of right, but its issuance involves consideration of its effect in promoting justice (*Wiedwald* v. *Dodson*, 95 Cal. 450 [30 P. 580] ; *Betty* v. *Superior Court*, 18 Cal.2d 619 [116 P.2d 947] ; *Bartholomae Oil Corp* v. *Superior Court*, 18 Cal.2d 726 [117 P.2d 674] ; 16 Cal.Jur. p. 768 and cases cited), and in turn the trial court may determine that the commissioner has not abused his discretion. (*Newport* v. *Caminetti*, 56 Cal.App.2d 557 [132 P.2d 897].) On the allegations of the petition and the record before the commissioner in the present proceeding, it is concluded that no abuse of discretion has anywhere been shown. Indeed, the oral and documentary evidence in the record before the commissioner and before the trial court would not admit of a contrary conclusion.

The order is affirmed.

Curtis, J., and Carter, J., concurred.

TRAYNOR, J.—I concur in the judgment.

The California Real Estate Act, section 12(b), provides that judicial review of decisions of the Real Estate Commissioner shall be by writ of review as defined in Code of Civil Procedure, part III, title I, chapter 1. (Deering's Gen. Laws, vol. I, p. 30.) So long as this procedure is not held unconstitutional the present proceeding in mandamus should be dismissed as unwarranted under the Real Estate Act. In any event, this case cannot be fitted into the new mandamus proceeding to restore a suspended license. The period of suspension had expired when the proceedings were begun, and the petitioner could not therefore pray for a restoration of

his license. He originally prayed to have the record of the commissioner expunged. When the second proceeding was undertaken to suspend further or revoke his license because of his alleged disregard of the first suspension, he brought an action in the nature of a bill to enjoin the further proceedings, constrained into the form of a mandamus proceeding, setting forth that the decision of the commissioner in the first proceeding to suspend his license was erroneous on issues of fact. No decision was reached in the second proceeding. The majority opinion assumes that the only issue is the correctness of the commissioner's decision in the first proceeding.

The petitioner demanded the privilege of introducing additional evidence, but the trial court acted exclusively on the record of evidence taken by the commissioner and made the following minute order, ''The Court having read and considered the entire record of the evidence introduced and the proceedings had before respondent, finds that there is sufficient competent evidence to sustain the decision and the implied findings of respondent and the order suspending petitioner's license and finds no reason for annulling said order. The petition for writ of mandate is denied.'' The majority opinion holds that the superior court judge had discretion to deny an alternative writ of mandamus when he found that there was sufficient competent evidence in the record before the commissioner to support his findings and order, and that he thus had discretion to grant a review that has the scope of a certiorari review. The present decision is contrary to that in *Laisne* v. *California State Board of Optometry*, 19 Cal.2d 831 [123 P.2d 457], where the trial judge was reversed for not admitting new evidence, even though he found sufficient evidence in the administrative record to support the findings and order.

It is clear from the majority opinion that had the review in the present case been by certiorari as required by the Real Estate Act the result would have been the same—the commissioner's decision would have been sustained on the ground that there was sufficient evidence in his record to sustain his decision. It is therefore unnecessary to dissent from the judgment.

Gibson, C. J., and Edmonds, J., concurred.

SCHAUER, J.—I concur in the opinion of Mr. Justice Shenk.

This case presents to me, for the first time as a member of this court, the much mooted question as to what should be the policy of the courts of this state (until and unless the people act by express constitutional amendment) with respect to the scope of judicial review of administrative board proceedings. We definitely are not concerned with any problem of policy as to the extent of judicial power which should be given to administrative agencies. The people of the state when they see fit may, and in such instances as those of the Industrial Accident Commission and the Railroad Commission they have seen fit to, delegate substantially full judicial power to such agencies. *We are concerned only with the policy of the scope of judicial review which shall be exercised in respect of state-wide agencies to which such judicial power has not been extended by constitutional amendment.* That our decision has some relevancy to the finality of proceedings before such agencies is but incidental in the determination of our primary problem. The question comes as one of law on opposing contentions, voiced in this case by Mr. Justice Shenk on the one hand and Mr. Justice Traynor on the other, as to whether the procedure known as mandamus or that denominated certiorari is the proper medium for review of such proceedings. A more detailed enunciation of the respective views of the authors of the above-mentioned prevailing and concurring opinions herein is found in *Dare v. Board of Medical Examiners* (1943), 21 Cal.2d 790 [136 P.2d 304].

The arguments in favor of certiorari and of the principles upon which its applicability would depend also find most able and convincing delineation in the dissenting opinion of Mr. Chief Justice Gibson in *Laisne v. State Bd. of Optometry* (1942), 19 Cal.2d 831, 848 [123 P.2d 457]. Had I been a member of the court at the time the Laisne case was decided, I am impressed with the belief that the accurate historical recitals, the clear logic, and the practical philosophy of the Chief Justice, as expressed in his dissent in that case, would in all probability have led me to concur in the conclusion he advocated, as opposed to the extreme position then taken by the majority. But there are three considerations which now impel me to support, *in effect,* the majority view:

(1) The complete trial de novo doctrine of the Laisne case has been abandoned; (2) The question of whether or not mandamus is a proper remedy is no longer an open one; (3) The question fundamentally is more a matter of state policy than of abstract law, and California is committed to the broader policy.

1. *The complete trial de novo doctrine of the Laisne case has been abandoned.* By the decision in the Dare case (*Dare v. Board of Medical Examiners, supra*) the majority of the court has receded from the extreme position taken in the Laisne case with respect to the right of a party to a complete trial de novo on mandamus review, and has thereby substantially rectified perhaps the most serious of the practical difficulties suggested in the dissenting opinion in the Laisne case as bound to be encountered in practice under the majority rule as then stated. The procedure as now declared gives the reviewing court the power and duty of exercising an independent judgment as to both facts and law, but contemplates that the record of the administrative board shall come before the court endowed with a strong presumption in favor of its regularity and propriety in every respect and that the burden shall rest upon the petitioner to support his challenge affirmatively, competently, and convincingly. In other words, rarely, if ever, will a board determination be disturbed unless the petitioner is able to show a jurisdictional excess, a serious error of law, or an abuse of discretion on the facts. This is in full accord with the presumption declared in subdivision 15 of section 1963 of the Code of Civil Procedure, "That official duty has been regularly performed." It is, of course, also inherent in the mandamus remedy that the right of the petitioner to the initial issuance of the writ is not absolute. His right to make the application is absolute but the application implicitly calls for the exercise of judicial discretion, and within the limits of that discretion (for definition of *judicial discretion,* see *Gossman v. Gossman* (1942), 52 Cal.App.2d 184, 194-195 [126 P.2d 178]) the writ may be granted or withheld, as the facts averred in and circumstances appertaining to each particular case may require, in the interests of sound justice.

2. *The question of whether or not mandamus is a proper remedy is no longer an open one.* Right or wrong, as abstract legal philosophy, the mandamus method of review has been

repeatedly affirmed as the only tenable and available procedure for the review of state board proceedings. (See *Standard Oil Co.* v. *State Board of Equal.* (1936), 6 Cal.2d 557 [59 P.2d 119]; *Whitten* v. *State Bd. of Optometry* (1937), 8 Cal.2d 444 [65 P.2d 1296, 115 A.L.R. 1]; *Drummey* v. *State Bd. of Funeral Directors* (1939), 13 Cal.2d 75 [87 P.2d 848]; *McDonough* v. *Goodcell* (1939), 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205]; *Laisne* v. *State Bd. of Optometry* (1942), *supra,* 19 Cal.2d 831 [123 P.2d 457]; *Dare* v. *Bd. of Medical Examiners* (1943), *supra,* 21 Cal.2d 790 [136 P.2d 304]; *Russell* v. *Miller* (1943), 21 Cal.2d 817 [136 P.2d 318].) I do not believe that courts of last resort should lightly skip from side to side of a procedural fence on every change in their personnel. Certainly I do not mean that precedent should be followed to the point of strangulation of progress or perpetuation of harming error, but as to the declaration of judicial procedures in such cases as those under discussion, by which vested constitutional rights of individual persons are to be lost or defended, I am of the opinion that *certainty* of the method may be of greater public importance than its *technical soundness,* where the asserted unsoundness lies not so much in its operation as in its historical or theoretical derivation. In other words, assuming that error has been committed and applying the test stated in *Houghton* v. *Austin* (1874), 47 Cal. 646, 667, it seems likely here "that it will produce more of evil than of good to restore the law" to its former status. This conclusion finds implied support in the language of the Chief Justice in his Laisne case dissent, where (at p. 854 of 19 Cal.2d), in discussing the use of mandamus prior to the declaration of the extreme trial de novo theory of the majority in that case, he says, "So long as it was possible, by use of the writ of mandate, to evolve a proper relationship between the courts and administrative agencies, it did not seem essential to insist upon a return to the historically correct procedure from which the court had strayed." The Dare case decision appears to me to substantially re-establish a "proper relationship between the courts and administrative agencies."

3. *The question as to the scope of judicial review of administrative board proceedings is inherently more a matter of state policy than of abstract law, and the State of California is committed to the broader policy.* It is not disputed

that the question as to the scope which judicial review of decisions of administrative officers and boards shall take is a matter more essentially and fundamentally of *policy* than of *abstract law*. That there shall be some judicial review of such decisions is implicit in our system of government. Still substantially true and pertinent in fact, if not technically in all respects in law, is the declaration of this court as to administrative board proceedings made in *People ex rel. Whitney* v. *Board of Delegates of the S. F. Fire Department* (1860), 14 Cal. 479, 499: "As these were judicial questions, we must regard the Board itself as exercising judicial functions, and as exercising such functions in subordination and subjection to the control and supervision of the Courts, in the manner provided by law. It would be a reproach to the jurisprudence of the State, if the arbitrary, wanton, and illegal, exercise of such powers were beyond the remedial interposition of the Courts."

In view of the extended and able narration and exposition, in the recent cases previously cited, of the history, theory, and development of the law on the subject, a reiteration or attempted extension of such discussions would serve no useful purpose here. It is appropriate, however, to sketch some of the fundamental concepts out of and upon which our policy has developed, and, with a view toward possible ultimate legislative clarification of the procedure, to point out some of the difficulties which have beset this court in its efforts to afford unrelenting protection to the people in their constitutional rights and at the same time to preserve for them to a substantial degree the benefits in efficiency of administration offered by properly functioning and supervised administrative agencies.

In the first place, intellectual integrity requires a frank concession that the procedure known as certiorari (provided for in chapter I of title I of part III of the Code of Civil Procedure) appears from the academic standpoint to be that which traditionally would be appropriate to review of administrative board decisions. But the deduction clearly to be drawn from a perspective view of the whole forest of cases on the subject is that certiorari, strictly limited to its common-law function, does not constitute a vehicle adequate to carry the policy of the people of this state to the goal of the broad judicial review of state-wide administrative board decisions

which they desire as a bulwark against arbitrary deprivation of vested property rights. They, by our state Constitution, have divided the powers of government "into three separate departments—the legislative, executive, and judicial" (Cal. Const., art. III, sec. 1), the judicial power being expressly "vested in the Senate, sitting as a court of impeachment, in a Supreme Court, District Courts of Appeal, Superior Courts, such municipal courts as may be established in any city or city and county, and such inferior courts as the Legislature may establish in any incorporated city or town, township, county or city and county." (Cal. Const., art. VI, sec. 1.) This is fundamental policy.

Despite this theoretical division of powers the fact remains that each of the three departments is but supplementary to the others, the aggregate making up our scheme of government, and in the carrying on of the complex business of government it is inevitable that each department in exercising the *power* peculiarly vested in it shall make use of certain *functions* which inherently are more characteristic of the *power* of other departments. In this connection both the executive (administrative) and legislative departments necessarily carry on activities in which they receive and weigh evidence, consider the law relative thereto, and come to conclusions thereon.

The basic powers of each department are essentially disparate in character and, in most of their activities, the carrying on of the business of the several departments admits of the incidental use of certain limited *functions* of the others without encroachment upon the basic *powers* of such others, but in administrative board cases (the board functioning in the executive department of government), where an individual is subjected to a trial and by judgment of the board is to be deprived of a property right, a difficult problem is at once apparent. If the proceedings and decision of the board are given absolute finality as to both fact and law, it is obvious that the full judicial power has been exercised. This unquestionably would be destructive of the basic constitutional concept of division of powers and has not been advocated in entirety by the exponents of the minority view. They do, however, contend that the Legislature has the power under the Constitution to confer upon an administrative board the authority to make a final determination of issues of fact on

conflicting evidence, and that in such cases the determinations should be vulnerable to attack on review only if it is shown that the board has acted arbitrarily or capriciously or that the determination is not supported by substantial evidence. In technical consistency, since they espouse certiorari as the remedy, it would seem that they should also contend that errors in law and irregularities in procedure within the jurisdiction of the board are not subject to correction on review. I infer, however, as is pointed out more particularly hereinafter, that they conceive for certiorari a scope which includes the power to correct "serious errors" in law. The majority of the court has insisted that the limited scope of review available under certiorari would be inadequate to serve the interests of justice or protect constitutional rights of individuals. In the Laisne case they went to the extreme of holding that only a complete trial de novo would suffice to protect such rights. But it is at once apparent that if a substantial amount of finality is not accorded board determinations, substantially all the benefits of the whole administrative board procedure are lost. This fact, pointed out in the Laisne dissent, has been recognized by the majority in the Dare case.

· The difficulty lies (a) in fixing a reasonable and workable boundary and (b) in finding or developing a procedure suited to the problem. Whether the boundary shall be set strictly at the jurisdictional inquiry of certiorari, shall go to the other extreme and encompass a complete trial de novo, or shall find a middle ground with strong presumptions in favor of the board determinations, giving them the effect of finality in most cases but with ultimate power in the courts independently to consider the evidence and the law, is obviously a question of governmental policy.

As previously indicated, I do not understand that the minority freely and unqualifiedly advocates certiorari in its strictly limited common-law scope as the most desirable form of procedure for review of proceedings of the type under discussion. This is indicated in the statement of the Chief Justice in the Laisne case dissent (19 Cal.2d at p. 868) that "Where there is neither a constitutional nor statutory requirement that a court make the determination of fact or reweigh the evidence upon which the administrative agency acted, the duty of the judicial branch is adequately fulfilled by a review upon certiorari *which extends to the questions*

*of law involved.* A review upon the issues of law would, of course, include such questions as whether the agency has regularly pursued the authority vested in it, whether it has acted arbitrarily and whether there is substantial evidence to support its determinations of fact. *Our decisions have recognized that administrative rulings on questions of law cannot be accorded finality.* Such questions may be determined conclusively only by a court exercising constitutional judicial power. [Citation.] Upon issues of fact, however, where there is no constitutional requirement that the facts be judicially determined and no statutory indication that the review was meant to extend to a re-examination of questions of fact, the court should uphold the administrative determination unless it is found that there is no substantial evidence to support the finding." (Italics added.) A similar implication that certiorari, in administrative board reviews, should and could accomplish the correction of *errors at law* is found in Mr. Justice Traynor's concurring and dissenting opinion in the Dare case. He says (at p. 805 of 21 Cal.2d) : "In an actual certiorari proceeding, the court would be confined to the record of the proceedings before the administrative board, and the board's determination would be quashed *if the record disclosed* that the board had acted outside its jurisdiction, or *had made serious errors of law* in the exercise thereof, or that its decision was not supported by substantial evidence." (Italics added.) Thus it seems that to overcome a board determination *approximately the same showing is necessary* whether we proceed under the majority view in the Dare case or in compliance with the minority view. For all practical purposes the only substantial difference between the two advocated procedures is that in the one case (the minority plan) the party is confined to the record in making his showing, and in the other (the majority plan) the party in making a legally equivalent showing may go beyond the record.

The solution of the problem as to what shall be the vehicle for review, if it is to go beyond the jurisdictional inquiry, should, I believe, within constitutional limits, pereferably be furnished by the Legislature. This, however, brings us perilously close to a constitutional problem, as will be noted later. That the people may in any case by constitutional amendment vest judicial power in a board, as has been done with the Railroad Commission and the Industrial Accident Commission, is,

of course, elementary. Our problem is limited to situations where there has been no such express delegation of constitutional authority.

So far as this case is concerned, the pertinent question is whether mandamus or certiorari is the appropriate medium for the assertion of petitioner's claims. It will appear that if the policy of the State requires any more than a jurisdictional review certiorari is not adequate; in other words, if either the extreme liberal procedure of a trial de novo, or the middle ground above defined, is to be employed, mandamus is the only presently available and possibly tenable procedure. Neither certiorari nor mandamus, however, without expressly applicable rules of procedure, appears to constitute an ideal vehicle. Both writs have useful functions in the field of jurisprudence but, archaic in their inceptions, neither was originally designed to furnish a review procedure adequate to the complexities of modern government in its use of administrative agencies.

The code section governing certiorari (Code Civ. Proc., § 1068) provides that "A writ of review may be granted by any court, except a municipal, police or justice's court, when an inferior tribunal, board, or officer, exercising *judicial functions, has exceeded the jurisdiction* of such tribunal, board, or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy." (Italics added.) In addition to the jurisdictional limitation implicit in the language above quoted, the scope of the inquiry on this writ is limited expressly by section 1074 of the same code: "The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board or officer." It is, I believe, because of such limitations on the scope of the review permissible under certiorari, coupled with the constitutional limitation (whatever it may be) on the authority which the *Legislature* may delegate to such boards, that the majority of the court, in carrying out what it regarded as the best policy for this State in the scope of the review of administrative board proceedings, has resorted to the procedure of mandamus, which at common law "was employed as a supplemental and extraordinary writ of a remedial character, and was early resorted to from the necessity of establishing a method to be used on occasions where the law had provided no

other remedy, and where in justice there ought to be one, upon the principle that no right should be without a remedy'' (16 Cal.Jur. 764, sec. 4).

Section 1085 of the Code of Civil Procedure provides that the writ of mandate ''may be issued . . . to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.''

This writ has come to be a sort of residuary legatee for judicial powers and procedures not otherwise specifically disposed of by constitution or statute, but by the very nature of its universality it leaves much to the ingenuity of the courts in administering it and likewise much to the conjecture of administrative boards and officers as to the procedure they may follow under its beneficent but uncertain supervision.

As to the legislative constitutional problem previously mentioned, we may recognize that the Legislature cannot make certiorari applicable to non-judicial boards (*Standard Oil Co. v. State Board of Equal.* (1936), *supra*, 6 Cal.2d 557 [59 P.2d 119]) and that it cannot add to or subtract from the jurisdiction expressly and exclusively vested in certain of the courts enumerated in section 1 of article VI of the California Constitution, but this does not preclude it from setting up a form or forms of procedure in the nature of the mandamus review which has been developed. So long as it does not add to or subtract from the courts' constitutional powers, express or inherent, it may prescribe regulations which would constitute a guide for the public, the administrative officers, and the courts. It should not be necessary for this court to have to improvise rules of procedure for review of the decisions of any of the several boards of the State, as is trenched upon in the Dare case, yet the need for such rules is patent. It seems highly probable that many of the seemingly arbitrary practices of such agencies and many of the claims of injustice to individuals would be obviated if there were legislatively established standards and plans of procedure, governing both the initial proceedings and the review thereof, known alike to the courts and boards and known by or avail-

able to the public. Not the least of the beneficiaries of such legislation would be the boards and officers themselves, most of whom are striving diligently and conscientiously to serve the public despite the uncertainties of the procedures which they have attempted to follow and to which they have been subjected.

In the first volume of California Reports the difficulties of this court in the use of the writs of certiorari and of mandamus appear to have commenced. It was stated in *People ex rel. Field* v. *Turner* (1850), 1 Cal. 152, 156, that "As a general rule, at common law, where *error* has occurred in proceedings, either civil or criminal, which cannot be reached by a writ of error, the writ of *certiorari* is a proper remedy to correct such *error*, unless some other statutory remedy has been given." (Italics added.) A similar mistaken view of the function of *certiorari* was indicated in *People* v. *Hester* (1856), 6 Cal. 679, 680. In *People ex rel. Whitney* v. *Board of Delegates of the S. F. Fire Department* (1860), *supra*, 14 Cal. 479, 499, 500, the previously expressed view was characterized as "a very serious mistake in regard to the functions of the writ at common law." It is also of interest to note that in *People ex rel. Mulford* v. *Turner* (1850), 1 Cal. 143 [52 Am.Dec. 295], the writ of mandate was given the function of requiring a district court to *vacate an order of disbarment* and to reinstate a firm of attorneys as members of the bar. In *People ex rel. Field* v. *Turner* (1850), *supra*, the writ of mandate was applied for but the writ of certiorari was issued, apparently in the view that it was of broader scope, in the premises, than mandate. The court said "In this, it is sought merely to reverse a judgment of the court. The *mandamus* must, therefore, be refused. . . . We deem it proper to award a writ of *certiorari*. . . ." That the difficulties of the court in regard to proper functions of the two writs were not ended by the Whitney case is manifest from the cases cited *supra* under the second of my reasons for the conclusion I have reached, as well as from the preceding discussion herein.

The conclusion of this court on the policy of applying the broader scope of mandamus to reviews of administrative board proceedings is likewise manifest from the cases last mentioned. That such policy has received wide attention and public discussion beyond the volumes of law re-

ports is apparent from the citations in the concurring and dissenting opinion of Mr. Justice Traynor in *Dare* v. *Board of Medical Examiners* (1943), *supra*, 21 Cal.2d 790, 803 [136 P.2d 304]. At the general election in 1942 a proposed constitutional amendment (S.C.A. 8, Proposition No. 16, General Election Ballot, 1942) calling necessarily for an expression of preference on the question of policy as to the scope of judicial review of decisions by administrative officers, was submitted to the people of this State. The general effect of the proposed amendment would have been to limit the scope of judicial review in such cases substantially to that afforded by the statutory limits of certiorari. On this proposition, on November 3, 1942, the people voted "Yes": 323,558; "No": 1,103,717. By this overwhelming vote the people expressed their preference for the liberal policy followed by the court as opposed to the narrower one proposed to them. The State of California must therefore be recognized as committed to the broader policy encompassed by the mandamus procedure.

The contest between certiorari and mandamus has not been an idle one. The strong presentation of the minority view has served a valuable purpose; its object has been substantially attained. The type of review procedure sanctioned by the majority in the Dare case appears to be an evolutional product of the views and efforts of both the majority and minority groups. Such procedure seems to envisage a thoroughly practical and proper relationship between the courts and administrative agencies. As previously suggested, there would be little difference as to results obtained in practical operation whether under the Dare case mandamus plan or the certiorari plan of the minority. We perhaps should recognize that we have in practical effect developed a special procedure for the review of administrative board proceedings. While questions of detail in procedure, as is characteristic in all legal or quasi-legal proceedings, may from time to time recur, particularly in the absence of legislatively enacted rules, the basic policy of the people of this state, as hereinabove depicted, with respect to the scope of the review of administrative board proceedings should, I believe, now be accepted by us and henceforth regarded as settled, until and unless the people,

154

in whom rests the full and final power, ordain otherwise by express constitutional amendment.

As to this particular case, regardless of the right purportedly given petitioner by the provisions of section 12(b) of the California Real Estate Act (Deering's Gen. Laws (1937), Act 112, p. 30, at p. 40) to seek a review pursuant to the provisions of Chapter I of Title I of Part III of the Code of Civil Procedure (certiorari) and whether or not such type of review could be lawfully ordained by the Legislature (see *Standard Oil Co.* v. *State Board of Equal.* (1936), *supra,* 6 Cal.2d 557 [59 P.2d 119]), he also had the right (available to all persons) to petition for the remedy of his own choosing (mandamus). Whether his petition stated facts entitling him to that remedy was a question of law and of judicial discretion depending on the substance of the facts stated; it was a question which would not be concluded by the mere existence of a possible alternative equitable procedure (see *Sheehan* v. *Board of Police Commrs.* (1920), 47 Cal.App. 29, 36 [190 P. 51] ; *Great Western Power Co.* v. *Pillsbury* (1915), 170 Cal. 180, 182-183 [149 P. 35]). The discretion of the trial court is not shown to have been abused.