Filed 6/20/23  Alexandria S. v. Super Ct. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ALEXANDRIA S., | C098115 |
| Petitioner, | (Super. Ct. No. STK-JD-DP-2020-0000464) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

1

ORIGINAL PROCEEDING; Petition for Extraordinary Writ, Michael Mulvihill, Judge.  Denied.

Miriam T. Lyell, Public Defender, Rose M. Cardoso, Deputy Public Defender, Nelson C. Lu, Deputy Public Defender for Petitioner.

No appearance for Respondent.

Alistair Sheaffer, County Counsel for Real Party in Interest San Joaquin County Human Services Agency.


Alexandria S. (petitioner), the mother of the minors, seeks an extraordinary writ to vacate the juvenile court's orders made at a March 6, 2023, hearing setting a hearing pursuant to Welfare and Institutions Code section 366.26 (statutory section citations that follow are found in the Welfare and Institutions Code).  (Cal. Rules of Court, rule 8.452.)  Petitioner contends there was inadequate compliance with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) in that no efforts were made to ask specified relatives, she claims are available, about possible Native American ancestry, that notice to the Jicarilla Apache Nation was sent to the wrong address, and that no effort was made to contact the Fort McDowell Yavapai Nation — a former Apache tribe.  (*Ibid.*)

We now deny the petition without the issuance of an order to show cause because no prima facie showing for relief has been made.  (See *Sipper v. Urban* (1943) 22 Cal.2d 138, 141 [application for writ required showing of prima facie case entitling petitioner to relief]; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1155 [same]; *Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1509 [issuance of an alternative writ or order to show cause is not required in every extraordinary writ proceeding];  *Kowis v. Howard* (1992) 3 Cal.4th 888, 893 [upon

2

ascertaining that the petition is in proper form and states a basis for relief, a court may issue an alternative writ or order to show cause].)

## FACTS AND HISTORY OF THE PROCEEDINGS

In this case, prior to detention of the minors, the maternal grandmother reported Mescalero Apache ancestry on the maternal side. The maternal grandmother reported that petitioner may be tribal affiliated, but the maternal grandmother did not have information at that time. She completed a Parental Notification of Indian Status form (ICWA-020) indicating possible eligibility for membership in the "Apache (Mescalero)" tribe. Petitioner and the minors' father were unavailable for interviews at that time. The social worker reported she contacted the Mescalero Apache tribe via email on December 18, 2020.

Petitioner first appeared at the December 22, 2020, detention hearing. The minute order reflects the juvenile court inquired and advised mother of the ICWA requirements and provided her with an ICWA-020 form. There is, however, no such completed form in the record and this court was not provided with the reporter's transcript for this hearing.

The San Joaquin County Human Services Agency (Agency) sent ICWA notices to the Apache tribes on March 5, 2021. The notices contained family background information on the minors' maternal and paternal sides, indicating possible Apache ancestry for the maternal side. Father's parents were born in Mexico.

On April 9, 2021, the social worker contacted the paternal aunt, who was submitted for an emergency relative placement assessment. The aunt reported she was going on an extended vacation and not returning until early August 2021. The Agency planned to follow up with her interest in placement at that time. There is no indication the social worker inquired about Native American ancestry when speaking to the aunt.

3

The social worker interviewed petitioner on April 16, 2021. Petitioner provided her parents' names and the names of her three younger siblings Aa.S., H.S., and M.S. (who were all minors at that time). Minors A.S. and E.S. had both previously reported that their maternal aunt, H.S., lived with them, as well as an "Uncle [T.]," but not that Aa.S. lived with them. Petitioner reported her parents separated when she was a minor and that she was abused by her father and does not maintain a relationship with her youngest half-sibling, M.S. Father was also interviewed on this date. He provided his parents' names, who had also separated when he was a minor. He reported both paternal grandparents were deported to Mexico about 10 years ago. Father also reported that his younger sister lived in Sacramento.

On April 20, 2021, the Mescalero Apache Nation responded to the ICWA inquiry reporting that the minors were not members, nor did they meet membership requirements to be eligible (as enrollment is a prerequisite for membership and an individual must provide proof of one-fourth of a degree or more) for membership in the Mescalero Apache Nation. The Mescalero Apache Nation said it would not intervene unless there was a significant change in the family's ancestry. The Agency filed an ICWA compliance declaration on May 10, 2021.

Father made his first appearance at the May 11, 2021, hearing. The minute order reflects that the juvenile court inquired about the ICWA, advised, and told father to fill out an ICWA-020 form. There is, however, no such completed form in the record and this court was not provided with the reporter's transcript for this hearing.

At the May 2021 disposition hearing, the juvenile court found, without objection from the parties, that the ICWA did not apply. After a failed attempt to reunify the minors with mother with family maintenance services, the Agency filed a section 387 petition in September 2022. The juvenile court ordered the minors detained and, on March 6, 2023, held a contested disposition hearing at which the court set a section 366.26 hearing. This writ petition followed.

4

DISCUSSION

I

Citing *In re Dezi C.* (2022) 79 Cal.App.5th 769, 776-777, review granted September 21, 2022, S275578, petitioner argues, "[t]here is no doubt that there is a mandatory duty by the agency to inquire with extended family members . . . about a child's potential Indian heritage" and the Agency failed to discharge that duty in this case.

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Petitioner argues we must remand to require the Agency make an ICWA inquiry of the following individuals to whom petitioner claims the Agency has access, but did not previously ask about the minors' possible Native American ancestry: (1) father; (2) the maternal uncle, Aa.S.; (3) the maternal grandfather; (4) the paternal grandparents; and (5) the paternal aunt. We conclude remand is not warranted on this record.

Petitioner first notes that there is nothing in the Agency's reports that suggests it made ICWA inquiries of father. This is accurate. Father's whereabouts were initially unknown and there is no reference to any inquiry made of father during the social worker's subsequent April 16, 2021, telephone interview of father. However, as petitioner acknowledges, the minute order from the hearing at which father made his first appearance reflects that the juvenile court *did* inquire about the ICWA, advised father, and told him to complete an ICWA-020 form.

While petitioner would have us speculate that father did not deny having Native American ancestry at that time, we will not do so on this record, which does not include the reporter's transcript of the hearing. Petitioner has "a duty to provide an adequate record on appeal to support [her] claim of error. [Citation.] In the absence of an adequate record, the judgment is presumed correct. [Citation.] 'All intendments and

5

presumptions are made to support the judgment on matters as to which the record is silent.' [Citation.] Error must be affirmatively shown. [Citation.]" (*Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1507.)

Moreover, it appears from the record that the Agency's ability to contact father was short-lived and was no longer the case after only a few months. By July 2021, father had stopped visiting the minors and ceased contact with the Agency. The record does not, therefore, support a finding that father is available to the Agency for questioning.

Regarding the maternal uncle, Aa.S., who was age 17 at the time petitioner was initially interviewed (and would have turned 18 years of age during the pendency of this case), petitioner now contends he gave "information on her siblings, suggesting that if it wanted to, [the Agency] could easily obtain access to [Aa.S.]." This assertion is not supported by the record. Although the Agency was provided with Aa.S.'s name, there is no information in the record as to his whereabouts or that he was accessible to the Agency.

Petitioner also contends the Agency had present addresses for the maternal grandfather and both paternal grandparents, as evidenced by the listing of a "present address" for each on the ICWA forms it sent to the tribes. She argues the Agency's listing of those addresses suggests it had access to those grandparents and they "were in fact available to the [Agency.]" The record as a whole, however, belies this contention.

The ICWA notice sent to the tribes, listing the addresses of the maternal grandfather and the paternal grandparents, was prepared, and sent prior to the Agency's interviews of the parents. The interviews revealed that the maternal grandparents had separated when petitioner was still a minor. Yet the "current addresses" provided for the maternal grandparents on the ICWA notice showed the couple still living together at the same address. The "current addresses" listed for the paternal grandparents were addresses in Stockton, California — yet father reported both had been deported to Mexico 10 years earlier. In December 2021, the Agency confirmed in its report that the

6

paternal grandparents were not permitted visitation with the minors because they reside in Mexico. Thus, it appears from the record that the "current addresses" were not current, at all, rendering unpersuasive petitioner's assertion that the ICWA notices dated March 5, 2021, establish that the Agency had access to the maternal grandfather and paternal grandparents.

Finally, we agree with petitioner that the Agency should have inquired of the paternal aunt, if it did not, about Native American ancestry when it spoke with her on April 9, 2021. But petitioner fails to acknowledge that, when the Agency spoke with the paternal aunt in April 2021, the aunt informed the Agency she would be on an extended vacation in Mexico until early August and that, in December 2022, it reported it had left several unreturned messages requesting the aunt to contact the Agency. Thus, it does not appear from the record that the Agency maintained the ability to contact the paternal aunt.

It would be an empty formality and waste of judicial resources to vacate the section 366.26 hearing to provide for a limited remand for the purpose of further inquiry of relatives who do not, from the present record, appear to be available to the Agency. Such "an empty exercise with a preordained outcome" would do nothing to further the purposes of the ICWA and would unnecessarily delay permanency for the minors. (See *In re E.W.* (2009) 170 Cal.App.4th 396, 402.) However, the juvenile court and Agency have an affirmative *and continuing* duty to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).) Therefore, if any relatives who may have information about the minors' possible Native American heritage have become or later become available, it is incumbent on the juvenile court and Agency to make appropriate inquiries prior to proceeding with the section 366.26 hearing.

7

## II

The Agency sent notice to the Mescalero Apache Nation of the Mescalero Reservation in New Mexico.  Although it used an incorrect post office box number (the address the Agency used was P.O. Box 227, Mescalero, NM 88340-0227; but the address then published in the Federal Register, was P.O. Box 228, Mescalero, NM 88340-0227), the tribe responded to the notice so, it is evident it received it.  (85 Fed. Reg. 24004, 24029 (Apr. 30, 2020).)

The Agency also sent notice to the Jicarilla Apache Nation.  The address it used was P.O. Box 1520, Dulce, NM 87528, which was the correct address in 2019 and is the correct address based on the *current* list.  (84 Fed. Reg. 20387-02, 20421 (May 9, 2019); 88 Fed. Reg. 17242-01, 17260 (Mar. 22, 2023).)  But the notice was mailed on March 5, 2021, and, at that time, the address then published in the Federal Register was P.O. Box 120, Dulce, NM 87528.  (85 Fed. Reg. 24004, 24029 (Apr. 30, 2020).)  The Jicarilla Apache Nation did not send a response to the notice.  Petitioner argues the failure to use the proper P.O. Box is a reversible error because there is nothing in the record to provide conclusive evidence the tribe received the notice.  (See *In re Mary G.* (2007) 151 Cal.App.4th 184, 21.)  We disagree.

The maternal grandmother did not give reason to believe they had Apache heritage generally or any affiliation with the Jicarilla Apache Nation.  The maternal grandmother indicated a possible affiliation with the Mescalero Apache Nation, specifically.  Petitioner concedes, as she must, that the Mescalero Apache Nation received actual notice and that tribe determined the minors were not eligible for membership and it would not intervene.  Thus, the Agency's error in not using the then published P.O. Box for the Jicarilla Apache Nation did not result in prejudicial error.

### III

Finally, we reject petitioner's argument that the Fort McDowell Yavapai Nation in Arizona should have been contacted because that tribe was *formerly* affiliated with the Apache an argument that has, as petitioner acknowledges, been previously rejected; indeed, *repeatedly rejected* over the past two decades.  (See 68 Fed. Reg. 68181 (Dec. 5, 2003) [Fort McDowell Yavapai Tribe *formerly* the Fort McDowell Mohave —— Apache Community of the Fort McDowell Indian Reservation)].)

First, as discussed above in connection with attempted contact with the Jicarilla Apache Nation, petitioner did not claim to have general Apache heritage with an unknown tribe, but to have tribal affiliation with the Mescalero Apache Nation.  Thus, the Agency's decision not to send notice to the Fort McDowell Yavapai Nation could not result in prejudicial error.

Moreover, neither the April 30, 2020, list of designated tribal agents nor the October 4, 2021, list of designated tribal agents — the lists applicable at the time pending proceedings — show the Fort McDowell Yavapai Nation to be one of the federally recognized Apache Tribes.  (See, 85 Fed. Reg 24004 (Apr. 30, 2020); 86 Fed. Reg. 54709 (Oct. 4, 2021).)  Thus, while the Fort McDowell Yavapai Nation may have been Apache at one point, based on the relevant federal registers, it was not at the time of these dependency proceedings.  Accordingly, the Agency's decision not to contact the Fort McDowell Yavapai Nation was not an error.

9

## DISPOSITION

The petition and request for stay are denied.

_____

HULL, Acting P.J.

We concur:

_____

EARL, J.

_____

MESIWALA, J.