[Civ. No. 12638. First Dist., Div. One. Mar. 12, 1945.]

PETER P. McDONOUGH Respondent, v. MAYNARD GAR-RISON, as Insurance Commissioner, etc., Appellant.

[Civ. No. 12639. First Dist., Div. One. Mar. 12, 1945.]

THOMAS McDONOUGH, Respondent, v. MAYNARD GAR-RISON, as Insurance Commissioner, etc., Appellant.

Robert W. Kenny, Attorney General, and Daniel N. Stevens, Deputy Attorney General, for Appellant.

Joseph A. Brown for Respondents.

PETERS, P. J.—On October 23, 1942, Peter and Thomas McDonough filed in the superior court petitions for writs of mandate to compel the state Insurance Commissioner to issue to them licenses as bail permittees. These petitions prayed for a trial de novo before a jury of the issue as to whether petitioners possessed the statutory qualifications required of all such permittees. The petitions allege that in August, 1942, petitioners filed with the commissioner, in proper form, applications for bail permittee's licenses; that on October 16, 1942, the petitions were denied by the commissioner without hearings; that petitioners are qualified for such licenses and are men of good character and reputation. Over the frequently expressed objections of the commissioner that the trial court had no jurisdiction to grant a trial de novo before a jury of the issue set forth in the petitions, the trial court submitted such issue to a jury. The commissioner declined to participate in the jury trial, with the result that no evidence was offered by him in opposition to that produced by the petitioners. The evidence being uncontradicted, the jury rendered special verdicts on all the issues submitted to it favorable to petitioners. Judgments were entered on the verdicts that petitioners are entitled to peremptory writs of mandate compelling the commissioner to issue to petitioners licenses as bail permittees. From these judgments the commissioner appeals.

In 1937 the Legislature of this state, in the exercise of its police power, determined that, for the reasonable protection of the public, bail bond brokers must be licensed by the Insurance Commissioner, and that no such license should be issued unless the commissioner finds that the applicant is of good moral character and a fit and proper person to engage in the bail bond business. (Stats. 1937, p. 1797, chap. 653; p. 1800, chap. 654; Ins. Code, §§ 1800-1821.) Since 1937 Peter and Thomas McDonough have attempted, unsuccessfully, to convince the various Insurance Commissioners that

they possess the requisite qualifications. On two occasions, after lengthy hearings, and after giving the applicants full opportunity to present all available relevant evidence on the issue, the commissioner has determined that the two petitioners are not fit and proper persons to engage in the bail bond business. The petitioners have challenged the validity of the statute and the determinations of the commissioner, in various ways, but every appellate court to which the problem has been presented has held that the statute was valid, and that the commissioner acted properly, and well within his powers, in denying the applications. (See *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205] ; *In re McDonough,* 27 Cal.App.2d 155 [80 P.2d 485] ; *Newport* v. *Caminetti,* 56 Cal.App.2d 557 [132 P.2d 897].)

The second of the applications referred to above was denied by the commissioner, after a full hearing, in May, 1941. The McDonoughs did not seek to have these denials reviewed by the courts in the manner provided in the statute, but in August, 1942, filed new applications with the commissioner. These applications are substantially identical with the two prior ones that had been denied after full hearings. The commissioner, acting pursuant to the express provisions of sections 1733 and 1821 of the Insurance Code, denied the applications without a hearing. Section 1733 provides that: ''The commissioner may, with or without hearing, suspend, revoke, or decline to grant or renew the license of an insurance agent, broker or solicitor, when any of the following facts exist in respect to the applicant or licensee: . . .

'' (c) Suspension, revocation or refusal to grant or renew a license previously issued or applied for under this code when such action by the commissioner occurred within five years before the application and was based on reasonable notice to and hearing of the applicant or licensee.''

Section 1821 of the Insurance Code, so far as pertinent here, provides: ''The provisions of sections 1730 to 1736, inclusive, are applicable to persons licensed under this chapter [bail licensees] and the words 'insurance agent' used in those sections include persons licensed under this chapter.''

The commissioner denied the applications without a hearing on October 16, 1942. The order of denial sets forth in detail the facts and circumstances relating to the two prior applications which were denied after full hearings, and then states

that the refusal to grant the applications is based on two grounds: First, that the "records of the acts of the Insurance Commissioner and of the Courts of this State" show that on two previous occasions, after full hearings, petitioners were denied licenses for reasons which indicated a lack of integrity, in that the applicants were not of good moral character and not fit and proper persons to carry on the bail bond business; and secondly, the commissioner finds that petitioners are not fit and proper persons to hold licenses to carry on the bail bond business. On October 23, 1942, the petitions for writs of mandate were filed in the trial court. As already indicated, these petitions asked for a trial de novo and requested a jury trial of all issues of fact.

The demand for a trial de novo was based on petitioners' interpretation of *Laisne* v. *California St. Bd. of Optometry*, 19 Cal.2d 831 [123 P.2d 457], which, at the time these proceedings were instituted was the latest decision dealing with the nature of mandamus proceedings brought to review adverse rulings of state-wide administrative boards and officers. The request for a jury trial was based on section 1090 of the Code of Civil Procedure, which confers discretionary power on trial courts in mandamus proceedings to try controverted fact questions before a jury.

In response to the alternative writs the commissioner appeared, demurred to the petitions and filed answers thereto, urging that the superior court was without jurisdiction to grant trials de novo, with or without a jury. The answers placed in issue the main allegations of the petitions and, as an affirmative defense, facts were pleaded to show that sections 1733 and 1821 of the Insurance Code, above quoted, were applicable. The answers set forth that in 1938 similar applications were denied by the commissioner after a full hearing; that the propriety of this denial was tested and the commissioner's findings approved in *McDonough* v. *Goodcell*, 13 Cal. 2d 741 [91 P.2d 1035, 123 A.L.R. 1205]; that the second similar application was denied by the commissioner May 7, 1941, after a full hearing; that no attempt was made by petitioners to have the correctness of these last mentioned determinations passed upon within the three-month period expressly provided for in section 1734 of the Insurance Code.

The trial court overruled the demurrers, and granted petitioners' request for a jury trial of all issues of fact. To com-

ply with section 1090 of the Code of Civil Procedure which requires the factual issues submitted to the jury to be "distinctly stated in the order for trial," the order stated that the issues to be tried by the jury were "(a) Whether or not the petitioner has had many years of experience in the bail bond business as a broker and is well qualified both financially and from the standpoint that he has been previously engaged in and conducted such business and has a broad experience in the bail bond business; (b) Whether or not the petitioner is a man of good business reputation and of good general reputation and is financially responsible to a substantial degree."

Thereafter the commissioner moved for judgment on the pleadings on the same grounds he had urged in his demurrers and answers. These motions were denied April 2, 1943. Thereupon the commissioner instituted a proceeding in prohibition in this court to restrain the trial court from further proceeding, alleging that the superior court was without jurisdiction to proceed, and requesting that the proceeding be dismissed. The briefs filed by both sides discussed the jurisdictional question on its merits, and neither side discussed any other point. This court, by a vote of two-to-one, denied the petition for a writ of prohibition, without opinion, on April 15, 1943.

Before this order of denial had become final, the consolidated causes were assigned to another department of the superior court, and came on for trial on April 21, 1943. Before the jury was impanelled the commissioner was granted permission to introduce evidence by way of further return to the alternative writs and in support of his motion to terminate the proceedings. The evidence so introduced established the truth of the factual matters recited in the commissioner's order of denial of October 16, 1942. After this evidence had been introduced the trial judge then presiding stated that, notwithstanding the previous rulings of the other trial judge who had ordered the jury trial, and regardless of the denial of the petition for a writ of prohibition by this court, he was nevertheless doubtful of his authority to proceed with a trial de novo, especially in view of the evidence that had just been introduced. He then suggested that the attorney general file with the Supreme Court an original petition for prohibition so that the Supreme Court could have before it not only the same record that was before this court, but also a full record of the proceedings and the evidence introduced before the

trial court on the motion to terminate. The motion to terminate was denied, and the trial postponed to await the ruling of the Supreme Court. On May 19, 1943, a proceeding in prohibition based on this most complete record was filed in the Supreme Court, and about the same time a petition for hearing of the proceeding denied by this court was likewise filed in that court. As in the briefs before this court, the sole point briefed by the parties was the jurisdictional question. The Supreme Court on May 27, 1943, without opinion, unanimously denied the original petition for prohibition, and on the same day, by a four-to-three vote, denied the petition for hearing of the petition filed in this court.

The causes again came before the lower court for a trial de novo before a jury in June of 1943, and again the commissioner urged his jurisdictional objections to a trial de novo with or without a jury. The trial judge expressed some doubts as to the propriety of a trial de novo before a jury, but stated that he accepted the negative ruling of the Supreme Court on the petition for a writ of prohibition to be a direction to him to proceed with the trial of the causes, de novo, with a jury. The commissioner thereupon declined to participate in the trial of the issues of fact. The jury was then impanelled, and the following questions, in the form of special verdicts, submitted to it. 1. Has the petitioner had many years of experience in the bail bond business as a broker? 2. Is the petitioner well qualified financially to engage in and conduct a bail bond business? 3. Is the petitioner qualified from the standpoint that he has been previously engaged in and conducted a bail bond business? 4. Has the petitioner a broad experience in the bail bond business? 5. Is the petitioner a man of good business reputation? 6. Is the petitioner a man of good general reputation? 7. Is the petitioner financially responsible to a substantial degree? The evidence being uncontradicted, the jury found in favor of petitioners on all the questions submitted, and, in due course, judgments were entered directing the commissioner to issue the licenses.

At the threshold of this appeal we are met by the contention that, inasmuch as the precise jurisdictional points now urged for a reversal of the judgment were urged on the unsuccessful petitions for prohibition, and inasmuch as the only points briefed on those proceedings were the jurisdictional questions, the denials of such petitions must have been

on the merits, and therefore such denials without opinion are res judicata, and constitute binding determinations that the trial court had jurisdiction to proceed as it did.

Until recently there has existed some doubt as to the legal effect of the denial, without opinion, of an application for an original writ. There was some language in some of the earlier cases that supported the view that ex parte denials of petitions for original writs without opinion were deemed to be adjudications upon the merits and in subsequent proceedings conclusive upon the parties as to the legal questions presented by the applications for the writs. (*Reilly* v. *Police Court*, 194 Cal. 375 [228 P. 860]; *Gubin* v. *Superior Court*, 104 Cal.App. 331 [285 P. 1071].) There are also a series of cases which hold that denial of writs of review without opinion by the Supreme Court of petitions to review determinations of the Railroad Commission are final adjudications on the merits. (*Napa Valley Elec. Co.* v. *Railroad Com.*, 251 U.S. 366 [40 S.Ct. 174, 64 L.Ed. 310]; *People* v. *Hadley*, 66 Cal.App. 370 [226 P. 836].) In *Geibel* v. *State Bar*, 14 Cal.2d 144 [93 P.2d 97], it was held that where the Supreme Court, without written opinion, denied a petition to set aside a judgment of suspension from the practice of the law, and later a similar application was filed, the denial of the first was res judicata.

Whatever confusion existed by reason of the language used in these cases was set at rest by the recent decision of *Funeral Dir. Assn.* v. *Board of Funeral Dirs.*, 22 Cal.2d 104 [136 P.2d 785], in which some of the language used in some of the above cases was expressly disapproved and some of the cases differentiated. The court held that the denial without opinion of an application for a prerogative writ (except habeas corpus) is not res judicata of the legal issues presented by the application unless the *sole possible* ground of the denial was that the court acted on the merits, or unless it affirmatively appears that such denial was intended to be on the merits. In the Funeral Directors' case a litigant petitioned the Supreme Court for a writ of mandate to compel a state-wide administrative board to act. The petition was denied without opinion. Subsequently, a substantially similar application was filed in the superior court. Counsel for petitioner argued to the superior court that the denial by the Supreme Court was not on the merits but was without prejudice to filing the

application in a lower court. The records of the case disclose that the trial court suggested that petitioner test his theory by requesting the Supreme Court to modify its order of denial, *nunc pro tunc,* by adding thereto "without prejudice." Such an application was made to the Supreme Court and denied without opinion. The trial court interpreted this as an indication that the first denial was on the merits, and held that such denial was res judicata in the proceeding pending before it. On appeal the Supreme Court held that its denial was not res judicata. Mr. Justice Schauer, speaking for the court, stated: "The sole question before us is whether or not a minute order of this court denying, ex parte and without written decision, a petition made directly to this court for a writ of mandate to compel respondent Board of Funeral Directors and Embalmers to enforce a 'judgment and sentence' pronounced by such board, renders res judicata a subsequent petition for the writ, made to the superior court and containing averments and exhibits substantially identical with those of the earlier petition to this court. The parties are the same. We state unequivocally that such minute order was not intended to, and did not, constitute a decision upon the merits of the petition, and therefore is not a bar to the subsequent proceeding." (22 Cal.2d at p. 105.) The court then went on to discuss the apparent confusion in the cases. It distinguished the Railroad Commission and State Bar cases, disapproved the language used in some of the other cases, and concluded that a denial without opinion of an application for an original writ can only be res judicata in subsequent proceedings when the only possible ground to support such denial is that it was on the merits. Stated another way, if any other ground exists upon which the court could have acted, it will be presumed that such denial was not on the merits. In the particular case since the denial could have been based on the theory that the court denied jurisdiction because the application had not been first made to a lower court, the order of denial must be construed as having been based on that ground and cannot be construed as a denial on the merits.

Another case directly in point on this issue is *State Bd. of Equalization* v. *Superior Court,* 20 Cal.2d 467 [127 P.2d 4]. In that case the superior court by mandate ordered the State Personnel Board to reinstate certain employees to their former positions with the State Board of Equalization. This judg-

ment was affirmed. (*Brown* v. *State Personnel Board*, 43 Cal. App.2d 70 [110 P.2d 497].) The board failed to comply with the order, and an order to show cause why they should not be punished for contempt was issued. While the contempt proceeding was pending the members of the board petitioned the District Court of Appeal for a writ of prohibition to restrain the contempt proceeding. The petition was denied without opinion. Thereafter the petitioners were found to be in contempt. They thereupon sought to have that determination reviewed by writ of certiorari. The court's right to hear the certiorari proceeding was challenged on the ground that the denial of the petition for prohibition was res judicata. The court held it was not, because in denying the petition for a writ of prohibition "the District Court of Appeal did not necessarily pass upon the issues here involved." The court went on to hold that at the time the prohibition proceeding was instituted the orders of the trial court, although in excess of jurisdiction, were interlocutory, and therefore could have been corrected in the trial court. The District Court of Appeal may have assumed that the trial court would correct its error and not enter a final order in excess of jurisdiction. That possibility was sufficient to prevent the order of denial becoming res judicata on the merits.

What is to be gathered from these two cases? It seems clear that these cases establish the following two rules, the second of which is but a corollary of the first:

1. If there is any other possible ground other than the merits upon which the denial of the petition for a writ could have been based, such denial is not res judicata of the merits in a subsequent proceeding.

2. Even though a trial court may have entered interlocutory orders in excess of its jurisdiction, an appellate court may assume the error will be corrected before the entry of a final order, and may refuse to interfere by prohibition. This possibility prevents such a denial of the writ without opinion from operating as res judicata in future proceedings.

Both rules are applicable here. So far as the denial of the petition for prohibition filed directly in the Supreme Court is concerned, it may have been denied because it was not first filed in the District Court of Appeal. This brings this denial directly within the rule of the Funeral Directors' case,

*supra.* So far as the petition filed in this court is concerned, we have no record, official or unofficial, as to the reasons that motivated the majority of this court in denying the petition. We are not permitted to indulge in guess, surmise or conjecture as to what those reasons may have been, nor can we rely on the memory of any or all of the judges of this court to now give a reason for the order of denial. The doctrine of res judicata rests on no such frail foundation. The point is that it could have been denied, and this reasoning applies to the action of the Supreme Court in denying a hearing and in denying the direct petition filed in that court as well, for either of two reasons other than on the merits. The existence of these two possibilities prevents the doctrine of res judicata from arising. The various writs could have been denied because the courts involved felt that, although there was an apparent excess of jurisdiction, an appeal from the final judgment was a plain, speedy and adequate remedy. ▮ It is elementary law that even though a trial court is acting in excess of its jurisdiction, an appellate court may, in its discretion, refuse to interfere by prohibition if the same questions may be passed on by an appeal after judgment, and if, in the opinion of the appellate court such remedy is plain, speedy and adequate. This fundamental rule, supported by citation to many cases is stated as follows in 21 California Jurisprudence, page 586, section 6: ''While a right to appeal presents no obstacle to the issuance of a writ of prohibition where, under the circumstances of a particular case, the remedy is not plain, speedy and adequate, there is no right to prohibition when an appeal affords a complete and adequate remedy and will accomplish the same ends. . . . Nor is an appeal deemed inadequate because a question of jurisdiction is involved.

''While the delay incident to an appeal has been considered as bearing upon its adequacy, it has been laid down that an appeal does not fail to be adequate and speedy within the meaning of the rule, simply because it is not so expeditious as prohibition. . . .

''It has been observed that the question whether or not the remedy by appeal is adequate is, even in cases where jurisdiction is plainly lacking, a matter resting in the sound discretion of the court upon the particular circumstances of each case. . . .''

(See *Dunn* v. *Justice's Court,* 136 Cal.App. 269 [28 P.2d 690]; *City of San Bruno* v. *Superior Court,* 171 Cal. 272 [152 P. 731]; *Bullard* v. *Superior Court,* 106 Cal.App. 513 [288 P. 629]; *Peck* v. *Municipal Court,* 53 Cal.App.2d 267 [127 P.2d 668]; *Duke* v. *Justice's Court,* 42 Cal.App.2d 178 [108 P.2d 707]; *Jordan* v. *Superior Court,* 30 Cal.App.2d 436 [86 P.2d 847]; *Loftis* v. *Superior Court,* 25 Cal.App.2d 346 [77 P.2d 491]; *Struck* v. *Superior Ct.,* 138 Cal.App. 672 [32 P.2d 1110]; *C. S. Smith Met. M. Co.* v. *Superior Ct.,* 16 Cal. 2d 226 [105 P.2d 587]; *Golden State Glass Corp.* v. *Superior Ct.,* 13 Cal.2d 384 [90 P.2d 75].)

Under these authorities this court and the Supreme Court could have denied the writs solely on the ground that even though there was an excess of jurisdiction, the validity of the orders could be passed on by appeal, and that remedy was adequate. It is true that this point was not urged before this or the Supreme Court, but counsels' failure to urge it does not restrict the court's powers. It is common practice for an appellate court to decide such applications on grounds not urged by counsel.

 It follows, under the rule of the Funeral Directors case, *supra,* that because the courts could have denied the applications on the ground that an appeal was an adequate remedy, such denials cannot now be held to have been based on the merits, and are therefore not res judicata.

The rule of the State Board of Equalization case, *supra,* is also applicable here. The lower court had ordered a trial de novo before a jury. That order was not final. It was no more final than an order on a demurrer prior to entry of judgment is final. The trial court could have changed its order any time before trial. When the petitions for writs of prohibition were filed the appellate courts may have denied them because they felt that the trial court would correct its error and not enter a final order in excess of its jurisdiction. The possibility that this may have been the basis of the denials prohibits such denials from becoming res judicata on the merits. On the merits of these appeals we are here presented with another chapter in the long and not entirely consistent volume of California law dealing with the subject of the scope of judicial review of the determinations of state-wide administrative agencies. Since the inception of these proceedings the commissioner has contended that under the facts here

involved the superior court was without jurisdiction to grant a trial de novo with or without a jury. His reasons are, first, that under sections 1733(c) and 1821 of the Insurance Code the commissioner may deny an application for a license where within five years of the date of such application he has denied a similar application after a full hearing. In the present case, in 1941, on the ground the applicant was not of good moral character, substantially similar applications were denied after full hearings. It was under these sections that the commissioner purported to act in denying the August, 1942, applications, without hearings. ▮▮▮▮ The second point is that the qualified trial de novo doctrine applied by the Supreme Court in several cases has no application at all to the review of state-wide administrative determinations denying a license, but applies only to cases of suspension or revocation of existing licenses by such agencies. This contention is based on the case of *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205]. In our view both contentions are sound.

▮▮▮▮ The provisions of the Insurance Code, starting with section 1800, set forth a complete statutory scheme for the licensing of bail permittees, and for a review of the determinations of the commissioner in granting or revoking licenses. Section 1800 of the Insurance Code requires all persons who execute undertakings of bail to be licensed. The act defines bail bonds and excludes certain kinds of bonds from its operation. Section 1802.5 defines a bail permittee's license—the type here involved—and requires a $5,000 bond to be given by such licensees. Section 1804 requires the applicant for such licenses to file his application with the commissioner and requires the commissioner to investigate the licensees. Section 1805 provides that the commissioner may decline to issue a bail license until he is satisfied that the applicant "is of good business reputation and of good general reputation"; that the applicant has never had a license revoked or refused because of his lack of honesty or integrity; that the applicant has an understanding of the obligations and duties of bail; that the applicant has not participated in any business transaction which "in the opinion of the commissioner tends to show unfitness to act in a fiduciary capacity"; that the applicant has not wilfully misstated any material fact in his application; that there is no outstanding judgment against the applicant of conviction of a misdemeanor or fel-

ony involving misappropriation of money; that the applicant has not committed an act forbidden by this code; that the applicant is a fit and proper person to hold the license. Section 1806 provides that the commissioner "may suspend, revoke or refuse to issue any license under this chapter whenever it is made to appear to him that the holder of such permit is not a fit or proper person to be permitted to continue to hold or receive such license." Section 1807 permits the commissioner to suspend or revoke any license for any cause for which he could deny the license, while section 1807.5 requires, except for a limited period, that such suspension or revocation shall only be after a hearing. The sections immediately following have to do with the issuance of the license, the regulation of certain phases of the bail bond business, the giving of examinations by the commissioner to applicants for licenses, fees for licenses, and certain provisions imposing duties on the commissioner. Section 1818 provides: "Any action to review an act of the commissioner denying, suspending or revoking a license ... shall be commenced within three months from and after the date of the act against which relief is sought. . . ." Section 1821 requires that applications for licenses shall not be denied without a hearing, except that sections 1730 through 1736 are made applicable to applications for such licenses. These sections set forth grounds for refusal, suspension or revocation of licenses substantially as outlined above. Section 1733 provides: "The commissioner may, with or without hearing, suspend, revoke, or decline to grant or renew the license . . . when any of the following facts exist in respect to the applicant or licensee: . . .

"c. Suspension, revocation or refusal to grant or renew a license previously issued or applied for under this code when such action by the commissioner occurred within five years before the application and was based on reasonable notice to and hearing of the applicant or licensee." Section 1734 provides: "An action to review an act of the commissioner denying, suspending, or revoking a license . . . shall be commenced and tried in the superior court of the county in which is located the principal office or residence of the party bringing it unless the parties thereto stipulate otherwise." The action must be brought within three months of the date of the act against which relief is sought.

These provisions have been summarized in order to show how completely the Legislature has set up standards for

such licensees, the powers of the commissioner in issuing and revoking such licenses, and the methods of review of his determinations. The Legislature in this respect seems to have anticipated Mr. Justice Schauer's observations in *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425], where, in his special concurring opinion, he stated that the Constitution of this state does not preclude the Legislature ''from setting up a form or forms of procedure in the nature of the mandamus review which has been developed. So long as it does not add to or subtract from the courts' constitutional powers, express or inherent, it may prescribe regulations which would constitute a guide for the public, the administrative officers, and the courts. It should not be necessary for this court to have to improvise rules of procedure for review of the decisions of any of the several boards of the state . . . yet the need for such rules in patent. It seems highly probable that many of the seemingly arbitrary practices of such agencies and many of the claims of injustice to individuals would be obviated if there were legislatively established standards and plans of procedure, governing both the initial proceedings and the review thereof, known alike to the courts and boards and known by or available to the public.'' (P. 151.) That is exactly what was here done by the Legislature.

A reading of the above provisions of the Insurance Code demonstrates that it was the intent of the Legislature to confer primary licensing authority upon the Insurance Commissioner. Upon him was placed the primary duty of ascertaining and finding the facts relating to the fitness of the applicant for a license. Provision was then made, not for a trial de novo, but for a ''review'' of his determinations by the superior court. There is no doubt at all of the constitutionality of such procedure. But the trial court here substituted for the statutory procedure a trial de novo before a jury without regard to what had happened before the commissioner—that is, just as if no proceedings had taken place before the commissioner. The substituted procedure thus adopted by the trial court was palpably erroneous, because thereby the jury and not the commissioner became the primary licensing agency of the state, which obviously was in direct violation of the provisions of the Insurance Code and of the legal doctrines built up by the courts during the past ten years for the review of the determination of state-wide administrative boards. An approval of the substituted pro-

cedure so adopted by the trial court would clearly operate as a complete nullification of all statutes regulating the issuance of licenses by state agencies and require juries primarily to pass upon the qualifications of all applicants for licenses. Without reference to the five-year provision of section 1733(c), at most we have here a state-wide administrative board refusing to grant an applicant a hearing. Assuming, contrary to the actual fact, that such refusal was improper and that a hearing should have been granted, the power of the superior court would have been limited to determining that there had been an abuse of discretion, and to ordering the commissioner to grant the hearing. The statute places the determination of the issue as to whether the applicant has a good or bad character in the first instance in the commissioner. The superior court has no statutory, inherent or constitutional power to decide that issue before the commissioner has acted. The superior court in such case could determine whether there was an abuse of discretion, but it was reversible error to decide the issue in the first instance for itself. (*Bila* v. *Young*, 20 Cal.2d 865 [129 P.2d 364]; *Universal Cons. Oil Co.* v. *Byram*, 25 Cal.2d 353 [153 P.2d 746].) In both these cases the appellate court, after having determined that a board had improperly acted on certain law matters, remanded the case to the fact finding body to pass upon the controverted factual issue.

The many cases decided on the question of the scope of judicial review of determinations of administrative rulings do not suggest far less compel the conclusion that a trial court may try de novo, with or without a jury, a factual issue which by statute is required to be passed upon by a board, where the board has not acted. ■ As to local boards, the law is now clear that either certiorari or mandamus may be used to review their determinations, but whichever writ is used the scope of review is the same. (*Walker* v. *City of San Gabriel*, 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383]; *Ware* v. *Retirement Board*, 65 Cal.App.2d 781 [151 P.2d 549]; *Shewbridge* v. *Police Commission*, 64 Cal.App.2d 787 [149 P.2d 429]; *Greif* v. *Dullea*, 66 Cal.App.2d 986 [153 P.2d 581].) Where such a board has failed to pass on a factual issue the proper procedure is to refer the problem back to the board. It is error for the superior court to try the issue de novo. (*Greif* v. *Dullea, supra*, p. 1010.) ■ When we come to the ques-

tion of the scope of review of state-wide administrative boards we find that the scope of review is much broader but by no means unlimited. In *Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848], it was held that at least in certain cases the courts on review may exercise an independent judgment on the facts, and may grant a qualified trial de novo. But that so-called trial de novo does not mean a trial in complete disregard of what the board has done. The findings of the board or officer come before the superior court with a strong presumption of their validity. Obviously, where the board or officer has not acted, or has refused a hearing, there is nothing upon which the presumption can be based. The obvious solution is that the case should be returned to the board or officer so it, or he, can act, so that there will be findings to which the rule can apply.

While there is language in *Laisne* v. *California St. Bd. of Optometry,* 19 Cal.2d 831 [123 P.2d 457] (which was the latest case on the subject when the trial court here granted the right to the trial de novo), that would imply that the trial de novo required was unlimited, the later cases have definitely repudiated that extreme view. (*Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304] ; *Russell* v. *Miller,* 21 Cal.2d 817 [136 P.2d 318] ; *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425].) In the last named case Mr. Justice Schauer expressly placed his concurrence on the ground that *"The complete trial de novo doctrine of the Laisne case has been abandoned."* (22 Cal.2d at p. 144.)

We conclude this phase of the case with the holding, amply supported by the above authorities, that where an administrative board exercising state-wide powers has refused to grant a hearing, the superior court has no power to try de novo the factual issue the determination of which is conferred upon the board, but its power is limited to ordering the board to act, if an abuse of discretion is shown to exist. ▮ This is in accord with the elementary rule that mandamus will not be used to control discretion. The writ may not be used to compel the exercise of statutory discretion in a particular manner—it may only direct the board to act, not how it shall act. (See cases collected 16 Cal.Jur. § 28, p. 809.) Thus, in the present case the only possible issue that could have come before the trial court was whether the commissioner abused his discretion in denying to petitioners a hearing. Under no

theory did the court have power to pass on the merits of the applications until the board had acted on the merits. This conclusion is reached without reference to the provisions of section 1733 (c) of the Insurance Code.

Section 1733 (c), however, demonstrates that there was no abuse of discretion in denying the hearing. It provides that where an application has been denied, after a full hearing, within five years, the commissioner may, with or without a hearing, deny the application. The record shows that in 1941, after a full and complete hearing, the applications of these petitioners were denied on the ground that they were not fit and proper persons to become bail permittees. Petitioners could have had the correctness of these determinations passed upon under sections 1734 and 1818 of the Insurance Code. This, petitioners did not elect to do. They allowed these determinations to become final. Then, about one year later, they filed the present applications, which are substantially similar to the 1941 applications. No contention has ever been made that any circumstance intervened between 1941 and 1942 upon which a different ruling could be predicated, nor has any contention been made that any evidence is now available different from that produced in 1941. The 1941 denial is res judicata to the limited extent provided in section 1733 (c). That section is a legislative declaration that in the discretion of the commissioner his prior determination, based upon a hearing, may be res judicata for a period of five years. Such a statute is, of course, constitutional. If the statute provided that no application could be filed at all within five years of a previous denial, regardless of after discovered evidence, and regardless of changed circumstances, there might be some merit in the thought that then it would be unconstitutional. But the statute is permissive only. It confers discretion on the commissioner. If he abuses that discretion such abuse could be reviewed in a mandate proceeding. But that is not the present case where no facts showing a possible abuse are pleaded. On the face of the pleadings it affirmatively appears that no abuse occurred. It therefore follows that, since it affirmatively appears from the pleadings that the denial of hearings and denials of the applications were proper under section 1733 (c), there was nothing at all for the superior court to try.

The purpose of section 1733 (c) is obvious. A person applies

for a license. A full and complete hearing is had. The application is denied. The applicant is content with the ruling and does not seek to have it reviewed. He then files an identical application. If successive applications can be filed, and if the commissioner must grant a full hearing on each such successive application, the rich applicant can practically usurp the full time of the commissioner and the facilities of his office, to pass on his applications—and this in a situation where the commissioner has already heard the evidence and passed on its weight and credibility. No useful purpose would be served by such successive hearings and much useless expense would be incurred. The section is a sensible and intelligent attempt on the part of the Legislature to prevent such abuses.

There is an additional and alternative ground upon which it could be held that the trial court had no power to grant a trial de novo in these cases. It will be noted that petitioners are not licensees. They have never had a state license as bail permittees. They seek to secure such licenses. The commissioner has denied their applications. The rule, first enunciated in the Drummey case, *supra,* that permits a qualified trial de novo in certain cases has never been held to extend to the review of administrative determinations denying licenses, but has been held to apply only to the revocation or suspension of licenses. This was the very point decided as to these very petitioners in *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205]. The Drummey case had been decided in March of 1939. The McDonough case was decided in June of that year. In the latter case it was urged that the limited trial de novo doctrine of the Drummey case was applicable as well to the review of an administrative determination denying a license as it had been held to apply to the suspension or revocation of an existing license. The court, without a dissenting voice, held that the rule of the Drummey case had no application to the review of administrative refusals to grant a license. (13 Cal.2d at p. 752.) The court held that certain constitutional principles compelled the holding of the Drummey case and that those principles only applied to the revocation or suspension of existing licenses but had no applications to refusals to grant licenses. It was therefore held that as to the review of administrative refusals to grant licenses the scope of the review

in the superior court was to determine whether the administrative board had abused its discretion, which, so far as the evidence is concerned, meant that the court's power was limited to ascertaining whether the board's findings were supported by the evidence. The qualified trial de novo theory was expressly held not to be applicable.

Whatever our view may be as to the correctness of this distinction, as an intermediate court we are bound by this holding of the Supreme Court. The rule of the McDonough case has never been repudiated or even questioned in the later cases. All of them cite the case with approval. It is binding upon us.

For any one of these reasons it is obvious that the trial court committed error, serious and prejudicial error, in granting a trial de novo in the present case. Under no theory can such procedure be approved.

The judgments appealed from are reversed.

Knight, J., concurred.

WARD, J.—I dissent upon the ground that certain jurisdictional questions on this appeal are the precise questions raised on a petition for a writ of prohibition which was denied by the Supreme Court and are therefore res judicata. Further, when these questions and the additional questions raised are considered upon the merits, the conclusions reached thereon in the trial court should be affirmed.

The facts, as stated in the majority opinion, are favorable to the commissioner and are sufficiently accurate to render unnecessary any further statement in considering the three petitions for writs of prohibition, namely, (1) the petition to this court upon the record of pleadings; (2) the application to the Supreme Court for a hearing after disposition of the same application to this court, and (3) the direct application to the Supreme Court upon the pleadings and a transcript of evidence. Each petition was denied. It is unnecessary to consider the petition (1) to this court as the matter was subsequently disposed of by the Supreme Court on the same record (2). The petition (3) direct to the Supreme Court disposed of on the same date, but subsequent to the denial of the application (1) for hearing after disposition in this court, may be eliminated for the

reason that the question had already been adjudicated and it was not the duty of the Supreme Court to consider further the merits of the matter presented in said petition. Accordingly, whenever there is a mention herein of the petition for a writ of prohibition and the ruling thereon, unless otherwise stated it has reference to the application (2) for hearing before the Supreme Court after disposition in this court. Upon the granting of a motion to transfer for a hearing before the Supreme Court, that court has jurisdiction for all purposes. (*Moore* v. *Purse Seine Net,* 18 Cal.2d 835 [118 P.2d 1].)

That the doctrine of res judicata applies to writs and judgments if the parties and questions are identical is held in *Price* v. *Sixth District Agricultural Assn.,* 201 Cal 502 [258 P. 387]. The general principles therein approved, namely, that a fact or question which was in issue in a former proceeding between the same parties, and judically determined by a court of competent jurisdiction is res judicata, though the immediate subject matter or the form of or remedy sought in the two proceedings be different. (*Caminetti* v. *Board of Trustees,* 1 Cal.2d 354 [34 P.2d 1021]; *Goddard* v. *Security Title Ins. & Guar. Co.,* 14 Cal.2d 47 [92 P.2d 804]; *Hamilton* v. *Carpenter,* 15 Cal.2d 130 [98 P.2d 1027]; *Sutphin* v. *Speik,* 15 Cal.2d 195 [99 P.2d 652, 101 P.2d 497]; *Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636 [134 P.2d 242] and others.) The decisions by the District Court of Appeal following the rules laid down in the Price case are too numerous to cite. It is sufficient to mention *Progressive, etc., Bureau* v. *Whealton,* 62 Cal.App.2d 873 [145 P.2d 912]. (Petition for hearing by Supreme Court denied subsequent to decision in *Funeral Dir. Assn.* v. *Board of Funeral Dirs.,* 22 Cal.2d 104 [136 P.2d 785], relied upon on appeal by appellant commissioner.) In the present case the issues presented relative to jurisdiction are identical with those determined by the Supreme Court on the denial of the petition for a writ of prohibition.

It is claimed by the commissioner that a decision on an appeal wherein only jurisdictional questions were raised may not be declared to be res judicata when it was rendered without written opinion in a petition for a writ of prohibition. This contention is based upon *Funeral Dir. Assn.* v. *Board of Funeral Dirs., supra,* which will be referred to herein as

the Funeral Directors' case. The factual basis of that opinion differs from that disclosed in the Price case. In the Funeral Directors' case the court was dealing with successive applications for writs of mandamus. In the present case a petition for a prerogative writ was denied without written opinion and the same questions are presented on appeal.

The proceeding in the Funeral Directors' case was in mandamus, to compel a state board to enforce a judgment and sentence theretofore rendered and imposed by said board. The superior court and the District Court of Appeal and the Supreme Court were vested with concurrent jurisdiction to grant or deny the writ. The Supreme Court held, therefore, (p. 110) that the denial by it without written opinion "must be construed to constitute simply a refusal by this court to exercise its original jurisdiction." Here, the proceeding in prohibition was to prohibit the superior court from proceeding with the trial de novo before a jury, and to test the applicability of portions of certain Insurance Code sections; necessarily, therefore, the jurisdiction to grant or deny the writ rested only in the District Court of Appeal or the Supreme Court. The Price case is identical with this case except that a written opinion (*County of Los Angeles* v. *Dodge,* 51 Cal.App. 492 [197 P. 403]) in a mandamus proceeding had been filed in the District Court of Appeal.

The opinion in Funeral Directors' case, written by Mr. Justice Schauer, in which four questions were raised, is a scholarly statement of the legal reasons impelling the decision upon the two main issues in that case. It was unnecessary to decide the last two questions. The opinion on the essential issues is persuasive in argument and analogy. There is no ambiguity in the language that might leave in doubt what was intended. It is not necessary to read anything into the opinion or garnish the views expressed therein. The opinion speaks for itself.

The Funeral Directors' case holds 1. The initial action in disposing of an ex parte application for a prerogative writ does not require a written opinion if there is a written decision by minute order; 2. In matters in which the Supreme Court has exclusive power of review, a denial of an application for such a writ is a determination of the question on the merits; 3. That certain language in prior opinions indicating that there was a fast and binding rule that any denial

without opinion was a decision on the merits "may be considered to be in the nature of a dictum, so far as applicability to the *instant* case is concerned, . . ." (Italics added.) 4. If a petition *"showed on its face* that the prior adjudication was final and had been rendered *on the merits* of the application, it was an effective bar to the later original application. . . ." (First italics added.) 5. The denial of the writ in that case must be construed as "simply a refusal by the court to exercise its original jurisdiction." "It does not appear that any sufficient reason was shown for not making the application to the superior court in the first instance. The minute order *under such circumstances,* was not intended to be and is not an adjudication upon the merits of the facts presented in the application." (Italics added.) (*Funeral Dir. Assn.* v. *Board of Funeral Dirs., supra.*)

The opinion does not hold that a denial without written opinion of a petition for a prerogative writ may not be a decision on the merits; it does not hold that each denial is based upon the fact that the petitioner is afforded a plain, speedy remedy by appeal; it does not hold that it must be assumed from each denial that the petition is improperly and insufficiently set forth; it does not hold that a reviewing court is foreclosed from looking into the background of the case as it appears from the petition or the entire documentary record and determining that the previous decision was upon the merits; it does not hold that it must appear that the only possible ground to support such denial is that it was on the merits. If that were true the Supreme Court could deny an application upon two or more grounds, such as on "the merits" and for some technical reason. Adoption of that rule would mean that although that court had denied on the merits the court still would be forced to decide in a subsequent proceeding that it was not res judicata because there was a possible additional technical ground of denial. Had it been the intention to hold that a denial of a petition for a prerogative writ, except one of exclusive jurisdiction, must be assumed to be a denial upon some technical or trivial ground, it would have been an easy matter to say so.

*State Bd. of Equalization* v. *Superior Court,* 20 Cal.2d 467 [127 P.2d 4] is not applicable to the facts in the present case. There the Supreme Court's jurisdiction to entertain a certiorari proceeding to annul a judgment of contempt

rendered for an alleged violation of a writ of mandate was challenged. Prior to the order of contempt a petition was filed for a writ of prohibition to restrain the superior court from taking further proceedings. Of course, the District Court of Appeal could not guess that the superior court would make an order in excess of its jurisdiction and properly denied the petition. The proceeding before the Supreme Court was after the contempt order was made. The proceeding before the District Court of Appeal was prior thereto. The Supreme Court declared in the State Bd. of Equalization case (p. 470): "The two proceedings were separate and distinct." In the same case it is pointed out that one found guilty of contempt may immediately apply to a higher court for a writ of certiorari or habeas corpus and therefore that the order may have been made also upon the ground that the proper remedy had not been pursued. In the present case no question of correctness of the remedy is involved. It is admitted on all sides that a petition for prohibition was the proper remedy.

In the State Bd. of Equalization case the language of the Supreme Court is as follows (p. 471): "The writ of prohibition may have been refused because the District Court of Appeal did not assume at that time that the superior court would make any order in excess of its jurisdiction." The words "at that time" refer to the period before a contempt had been declared. In the present case, if there was error, it had been previously committed.

No question may be raised in the present case that the superior court did not have jurisdiction; no claim may be justly made that the petition was premature in the sense that the proceedings in the superior court were not ripe for determination. The petition was not demurrable upon some immaterial ground which might have been corrected; if so, it was not set forth in the special demurrer. In this case it could not be claimed that application should first be made to a lower court. The point presented was one of grave concern to the commissioner and to all applicants for insurance brokers' licenses, irrespective of the activity to be engaged in. The proper remedy was used. It was a matter of great importance. What could have been the reason, based upon the record, that actuated the Supreme Court to deny the petition other than "on the merits."

It has been suggested that the Supreme Court denied the petition because the members thereof thought that the trial court would correct an error before entering judgment. As it will subsequently be developed the trial court did not commit a jurisdictional error. But let it be assumed that it had. Since when may a reviewing court deny to a litigant his right upon the assumption that another court will correct the injustice. Let it be assumed that a trial court *without jurisdiction* is about to commence a hearing, or actually is in the midst of a trial, may it be said that the Justices of the Supreme Court of this state would deny a petition for prohibition because they thought or *hoped* that the trial judge might change his mind on a vital question. A reviewing court is bound by the record as presented, and may not indulge in guesswork, speculation or surmise in making or refraining from making orders that may affect the action of a judge of an inferior court whether the question involved be constitutional or jurisdictional.

I do not cite the next case as final authority because it has been certified for hearing to the United States Supreme Court, but rather as an illustration of the views of the Justices of the Supreme Court to the effect that an inference may be drawn from that case that it is not necessary that a minute order should show definitely on its face that an adjudication on the merits was intended. In *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605 [155 P.2d 42], the defendant had moved to abate the action and in its answer pleaded an Oregon injunction decree. In addition a motion to continue the matters indefinitely was presented. The trial court denied the motions. On appeal, Mr. Justice Carter, who is meticulously careful to bear in mind the salient features and deciding points in previous cases and compare them with the facts and the law before the court in a given case, and to disapprove without equivocation any conflict or inconsistency in any prior opinion (dissenting opinion in *Estate of Platt*, 21 Cal.2d 343, 353 [131 P.2d 825], and many others), said (p. 607) : ''The court denied defendant's motions without opinion and it must be assumed the denial was on the merits.'' The pleadings and the ruling—without written opinion—was sufficient to warrant the assumption that the lower court acted on the merits, and the conclusion seemed so obvious that it was not necessary to cite in support thereof

an authority. It is true that a forceful dissent was written by Mr. Justice Edmonds (who is noted for the power and vigor of his written opinions), attacking the assumption as contrary to the facts and the pleadings, but there is no suggestion that the assumption could not be indulged on a proper record. Neither in the majority nor in the minority opinion in the Leet case, nor in the opinion in the Funeral Directors' case is it indicated that it be assumed that a denial of a petition for a prerogative writ without written opinion is not on the merits. The Funeral Directors' case distinguished certain cases, and in doing so stated on page 109 that since the petition in *Dawson* v. *Superior Court,* 158 Cal. 73 [110 P. 479] *"showed on its face* that the prior adjudication was final and had been rendered *on the merits* of the application, it was an effective bar to the later original application here.'' (First italics added.)

"Showed on its face'' does not necessarily mean that the prior adjudication appeared in the minute order—though if it did that would be the end of the matter. The words "showed on its face'' have reference to the face of the pleadings as distinguished from the evidence. (*People* v. *Megladdery,* 40 Cal.App.2d 748, 757 et seq. [106 P.2d 84]. ) "Showed on its face,'' so far as the facts of this case are concerned, means that from the language employed in the pleadings it is apparent (*Pankewicz* v. *Jess,* 27 Cal.App. 340 [149 P. 997] ; 25 C.J. 333, notes 44 and 48) that the order, without written opinion, was made on the merits of the application and not upon a technical ground.

Where an aggrieved party elects to apply for a writ of prohibition against a superior court to prohibit that court on jurisdictional grounds from proceeding with the trial of a cause then before it, and the petition for the writ is presented on a complete record of the pleadings out of which the jurisdictional points arise, and is denied without written opinion, and thereupon, on the assurance of such denial the trial court proceeds with the trial of the case, it should be and is the law that on appeal the reviewing court should not be foreclosed from looking into the background of the case, as shown by the pleadings and from holding, if the record so warrants, that such denial must have been based on the merits, even though it did not so appear from the order.

The question presented to the Supreme Court was one of jurisdiction. The commissioner contended that the superior court had but one duty, namely, to dismiss the proceeding without any hearing in the superior court. Specifically, the question involved (1) the legal justification of the denial of a hearing before the commissioner based upon Insurance Code sections 1821 and 1733; (2) the right of McDonough to a trial *"de novo"* and (3) the right to a jury trial. These three questions were disposed of on the petition for the writ to the Supreme Court and are now res judicata. They may be considered under that heading or as contentions raised on appeal. Whatever is said herein with reference to them has that alternative in mind, that is, it represents my conclusion on the res judicata question or on "the merits" on appeal. Contentions not directly involving jurisdiction, but rather excess of jurisdiction, will be considered as points on appeal.

That portion of section 1733 of the Insurance Code providing that the commissioner may decline "with or without hearing" to grant the license "of an insurance agent, broker or solicitor" when within five years a previous application by the same party has been denied must be read in connection with section 1821. (*Newport* v. *Caminetti*, 56 Cal. App.2d 557 [132 P.2d 897].)

At the outset it should be made plain that I do not question the right of the Legislature as a reasonable regulation to ban the filing of repeated applications. What constitutes reasonable regulation need not be discussed at this point except to comment that the provisions that a licensee's certificate of authority may be suspended "not exceeding one year" (§ 704) and that an application may be refused without a hearing if made within five years of the denial of a previous application (§ 1733) speak for themselves. I agree that the regulation could provide that the application could not be filed within a specified reasonable time, or that it might be filed and denied upon the sole ground that a previous application had been denied within a reasonable specified statutory time. My objection is that, as the statute does not prohibit the filing of a renewed application within the specified period, the commissioner may not arbitrarily discriminate in granting a hearing to applicants. For example, A, B and C file applications. A's application is granted

without hearing, and B's refused after hearing. C's is denied without a hearing. B at least had an opportunity to meet objections, which was denied to C. An applicant is required to make a showing "satisfactory to him," the commissioner (§ 1732), covering grounds for suspension or revocation as enumerated in section 1731, but an applicant may not be refused a license without an opportunity to be heard. (§ 1821.) The refusal to hear the application under such circumstances is a violation of section 1 of the Fourteenth Amendment to the Constitution of the United States and of sections 1, 13 and 21 of article 1 of the Constitution of the State of California.

There is nothing in *Newport* v. *Caminetti, supra,* holding that the power conferred by section 1733 to deny an application without a hearing is constitutional. On the contrary, the court called attention to section 1821 providing that a license shall not be refused without an opportunity to be heard, and held that the section covered an applicant for a bail bond license. It should be noted that section 1733 applicable to renewed applications for licenses was enacted in 1937. (Stats. 1937, ch. 652.) Two years later the Legislature, evidently realizing the unconstitutional power conferred upon the commissioner in this respect, enacted section 1821, which applies specifically to *applicants,* but the section declares that it is also applicable to persons theretofore licensed. The Legislature may have enacted section 1821 because of views expressed in *McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205], which will be discussed in detail later.

The suggestion herein that the Supreme Court denied the application for hearing on the writ upon the ground that the commissioner was justified in refusing respondent an opportunity to be heard, and that such conclusion might have been based upon the language used in *McDonough* v. *Goodcell, supra,* is without foundation. If there was any such thought, the Supreme Court would certainly know that, whatever views might have been entertained at the time of the filing of the opinion in *McDonough* v. *Goodcell, supra,* based upon the wording of section 1733, that such section must be read with that portion of section 1821—a new section—setting forth that a license shall not be refused without a hearing.

The thought that in denying the petition for hearing in this case the Supreme Court adhered to the Goodcell case is theoretical and not substantial. *Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848], which involved a state-wide administrative board, was decided less than four months prior to the Goodcell case, wherein, in speaking of the Drummey case, it was said "[T]he holding therein authorized an extension of the traditional functions of a proceeding in *mandamus.* . . . It was held that the superior court in such a proceeding had the power to exercise an independent judgment on the facts presented to it and thus inquire into and determine the question of the lawfulness of the order of the board, and that the petitioners had the right to require that the trial court conduct what would be in substance and effect a trial *de novo* in the course of which the parties would not be limited to the record made before the board." (*McDonough* v. *Goodcell, supra,* p. 752.) The court then held that the ruling in the Drummey case "should be limited to the situation therein appearing, and as an exception to the general rule in *mandamus* proceedings in the superior court is not to be *applicable otherwise.*" (Italics added.) The interpretation followed in the Goodcell case is that because Drummey previously held a certificate or license he was entitled to a trial de novo, without being "limited to the record made before the board," but that McDonough, who had previously conducted the business of bail bond broker or agent for thirty-five years or more, and who was forced to apply for a license (Stats. 1937, ch. 652), was not entitled to a trial de novo after denial of the application.

The question whether the McDonough application could be determined without a hearing was a question of law to be decided by the court. If this was all that appeared in the petition for the writ of prohibition, and while the order of denial on the merits was legally justified, from a practical standpoint it might have been better to grant the writ and issue an order to the superior court to send the matter back to the commissioner for a hearing. But that was not all. The commissioner made findings of fact based upon *McDonough* v. *Goodcell, supra,* and in part upon prior findings made by his predecessor and by himself "That the applicant was not of good moral character" and "not a fit

person to engage in the bail bond business." The applicant for the license was not given an opportunity to submit evidence in his own behalf or to explain the above findings and others which will be considered later. (§ 1821.) So it appears the issues included not only the applicability and the interpretation of sections of the Insurance Code, but issues involving essential questions of fact necessary to the determination of the substantial rights of the parties.

The commissioner does not deny that factual matters may be submitted to a jury but contends that the factual matters submitted here were improper,—in brief, that the question in the case was the right of the commissioner to deny the application without a hearing de novo or otherwise.

The difficulty in California in handling appeals and writs pertaining to state-wide administrative boards arose upon the filing of the decision in *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119]. In that case it was held that the long established rule that "certiorari" was applicable to state-wide administrative boards or commissions was incorrect. The ruling was based upon the ground that such bodies did not exercise judicial functions. Three years later in *Drummey* v. *State Bd. of Funeral Directors, supra,* it was held that the proper remedy to be invoked by those who claim to be aggrieved by an action of a state-wide board in exercising its power in respect of licenses is a writ of mandate, in which the court should hear the matter *"de novo."* It was held that the court in such a mandamus proceeding "must exercise an independent judgment on the facts" but "should be assisted by the findings of the board." Three months later it was determined that the rule set forth in the Drummey case was applicable only to a licensee, and not to an applicant for a license. (*McDonough* v. *Goodcell, supra.*) McDonough was not specifically confined to a writ of review. Such ruling would be contrary to *Standard Oil Co.* v. *State Board of Equalization, supra,* and *Drummey* v. *State Board of Funeral Directors, supra.* Referring to the Drummey case, it was held in the 'McDonough case (p. 753): "[E]ven in the absence of such a statutory provision due process required that a party aggrieved by reason of a ruling of the officer or board involving a constitutional right be accorded an opportunity to resort to a judicial tribunal for redress."

It is suggested that the Goodcell opinion in this particular respect, namely, that McDonough was not entitled to a trial de novo, is binding on appeal, and that a member of an intermediate court must follow the ruling therein irrespective of conclusions reached by the Supreme Court in subsequent actions. Three years after the decision in *McDonough v. Goodcell, supra,* it was determined that a trial de novo was a trial wherein the independent judgment of the court must be given and that "*[T]he court must consider all material evidence and was not confined to the record of the proceedings before the board.*" (*Laisne v. California St. Bd. of Optometry,* 19 Cal.2d 831, 834 [123 P.2d 457].) (Italics added.)

The provision in the Insurance Code that "Any action to review an act of the commissioner denying," etc. (§ 1818) "shall be commenced and tried in the superior court" etc. (§ 1734) makes no mention of a trial "*de novo*" for either a licensee or an applicant. In the absence of some special statutory provision therefor the code sections covering mandamus proceedings should be applied. (Code Civ. Proc., §§ 1084 to 1089.) Assume, however, that the language in *McDonough v. Goodcell, supra,* though not based upon authority and without any stated reasons why there should be one test for the licensee and another for an applicant without license, does apply so far as an intermediate court is concerned, what is the duty of such court when subsequently the Supreme Court on similar questions has acted contrary to the holding in the Goodcell case?

*McDonough v. Goodcell, supra,* has often been cited as authority on many legal issues, but so far as I can find never by any appellate court on the subject at hand. That case adopted a new rule, which, however, has never since been followed in any case to which my attention has been called, whether one relating to insurance or otherwise. It stands alone, applicable only in that case. Another rule exists applying to applicants to practice or conduct a profession, vocation or business. Subsequent to such ruling the Supreme Court has issued writs of mandate in matters wherein it has original jurisdiction, and treated the hearing as a trial de novo, or, at least, has reviewed and weighed the evidence, though, as yet, the court has not permitted additional evidence.

In *Staley* v. *State Bar*, 17 Cal.2d 119 [109 P.2d 667], the Supreme Court issued an alternative writ of mandate requiring the bar examiners to show cause why the petitioner should not be permitted to practice law. The alternative writ was discharged and a peremptory writ denied. It was decided in that case that the petition was not sufficient to warrant a reexamination of the record, but the proceeding was treated as one in mandamus. In *In re Stepsay*, 15 Cal.2d 71 [98 P.2d 489], the Supreme Court not only overruled the State Bar on a question of the ''character'' of an *applicant, but weighed the evidence and gave its independent judgment* that the applicant was of good moral character, and therefore entitled to take an examination. In *McDonald* v. *State Bar*, 22 Cal.2d 768 [141 P.2d 217], the Supreme Court thoroughly considered the evidence and passed upon the right of an applicant to withdraw an application. In *Laisne* v. *California St. Bd. of Optometry, supra*, at p. 840, the court said: ''The cases interpreting the State Bar Act strengthen our conviction that if finality were given to the action of an administrative agency, such would be an unconstitutional exercise of judicial power.'' It may be suggested that in State Bar matters jurisdiction to review is given directly to the Supreme Court. The review of a denial of an application for an insurance broker's license is given directly to the superior court. (Ins. Code, § 1734.) The procedure should be, and is, the same in the court that first assumes jurisdiction.

During the oral argument the legal representative of the commissioner, argued not only ably and well, but frankly and conscientiously cited *McDonough* v. *Goodcell* in support of many points in this case, but never advanced a claim that the opinion was sound on the question under consideration. He was interrogated by the court as follows: ''You still contend, do you, Mr. Stevens . . . that the Superior Court was without jurisdiction to grant a trial before a jury? That is the basic contention is it? You still insist on that? [Answer]: No; I certainly haven't mentioned it in any of my briefs, Your Honor, I believe this, the Trial Court, as I have pointed out in my briefs, was expressly authorized by statute, by Section 1734 of the Insurance Code, to take jurisdiction and review the actions and orders of the Insurance Commissioner in denying licenses. Now I think unquestionably that the Superior Court had jurisdiction to make such

a determination upon reviewing the actions taken by the Insurance Commissioner." On oral argument it was admitted that a rule which permitted a licensee a hearing de novo and denied the same privilege to an applicant was in effect illogical. Mr. Justice Spence, who recently received a merited promotion, in considering Insurance Code, sections 1821 and 1730 to 1736 said in *Newport* v. *Caminetti, supra,* at p. 559: "The only *logical* conclusion to be drawn is that the word 'licensed,' as used in section 1821, was intended to cover both persons already licensed and persons applying to be licensed under that chapter." (Italics added.) Appellant's petition in the Newport case for a hearing by the Supreme Court was denied without a *dissenting vote.* The language in the Newport case undoubtedly took into consideration the fact that section 1821 became effective after the rendition of the decision in the Goodcell case. If that section had been effective at the time the Goodcell opinion was handed down the court would never have held that an applicant is not entitled to a hearing.

In *Bodinson Mfg. Co.* v. *California E. Com.*, 17 Cal.2d 321 [109 P.2d 935], involving applications to award unemployment compensation the court said (pp. 330, 331): "The writ of mandamus may therefore be used in this state, not only to compel the performance of a ministerial act, but also in a proper case for the purpose of reviewing the final acts and decisions of state-wide administrative agencies which do not exercise judicial power. That being so, *mandamus* was the proper proceeding to bring in the present instance. . . . The adversary parties to these proceedings are entitled to such appeals as are permitted under the statute, and further, are entitled to appear in court to test the commission's final decision, thus insuring compliance with the requirements of the law." In *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620 [91 P.2d 577], there appeared some doubt as to whether the language of the statute providing for a hearing after complaint applied to an applicant as well as to a licensee. It was determined that though the language "is not as clear as it might be" there is an implication that it is appropriate to applicants in the same manner as to licensees (p. 651). It has always been the policy of the courts of this state to grant a hearing, review, de novo or otherwise, to any applicant refused a license to conduct a business. (*Ray* v. *Parker,* 15 Cal.2d 275 [101 P.2d 665].)

The ruling in the Goodcell case is explainable. The court did not say that the applicant was not entitled to a hearing but implied that he was not entitled to a trial de novo. It should be repeated; the provision that a license shall not be refused without a hearing and an opportunity to the applicant to produce evidence in support of his application did not become effective until after the Goodcell decision.

Acquainted with the facts and knowing the law, the Supreme Court could do nothing but deny the petition to hear the matter after decision in the District Court of Appeal. It is not reasonable to assume that the denial was based upon the ground that the court guessed or concluded that the trial court might change its ruling or that the commissioner had an adequate remedy by appeal. The attorney general argued as regards the petition that it was important, in connection with the administration of the Insurance Code, that the interpretation of section 1821 should be quickly and definitely determined, adverting to the fact that no final judgment had been entered in the mandate proceedings. It appears that the decision would affect others than McDonough. That the commissioner did not have the right to dispose of a petition for a license without a hearing; that he in fact did so; that the superior court had jurisdiction to correct such an abuse of administrative functions, appeared so plainly on the face of the record that the Supreme Court did not have to consider technical matters but decided solely upon the merits.

The denial of the petition in the Supreme Court was a recognition of the change in statute and an abandonment of the holding in the Goodcell case that an applicant for a license was not entitled to a trial de novo. Otherwise it was the clear duty of the court to grant the writ and direct the trial court to confine the review to a hearing on questions of law. In view of the foregoing it must be concluded that on the second point, namely, whether McDonough was entitled to a trial de novo, the Supreme Court decided on the "merits" and not upon some conjectural technicality. As a matter of emphasis it may be repeated here that the petition for a writ of prohibition made direct to the Supreme Court should, of necessity, be denied, as the court had ruled on the petition for hearing after decision in the District Court of Appeal. In

*Paige Co. of N. Cal.* v. *Superior Court,* 194 Cal. 795, 796 [231 P. 344], the court said: "It appearing upon the face of the petition herein that the petitioner has heretofore applied for a similar writ of prohibition to the District Court of Appeal, in and for the third appellate district, and that its said application was, on the fourteenth day of November, 1924, denied by said court, the remedy of the petitioner herein was by application for a transfer and hearing in this court upon its aforesaid petition and was not by way of an original application to this court for the writ herein sought. Its said application is for that reason denied." (*Dawson* v. *Superior Court, supra; Barbee* v. *Appellate Dept. of Superior Court,* 209 Cal. 435 [287 P. 979]; *Linstead* v. *Superior Court,* 7 Cal.2d 347 [60 P.2d 280].)

If the only question raised on the petition before the Supreme Court was one of law then such question could be decided only by the court. However, it was made plain in the petition to the Supreme Court that factual matters were involved. The superior court *had jurisdiction* to try the issues of fact with a jury. (Code Civ. Proc., § 1090.) Code of Civil Procedure, sections 1084 to 1097 inclusive, deal with the rules and procedure governing the writ of "mandamus." (§ 1084.) If the answer to the petition for the writ raises a question of fact—as it did in this case—essential to the determination of the substantial rights of the parties, the court may in its discretion order a jury to pass upon such question. (Code Civ. Proc., § 1090.) Trial by jury under this section cannot be demanded by either party as of right but is resorted to in the discretion of the court. (*Sparks* v. *Board of Dental Examiners,* 54 Cal.App. 2d 491 [129 P.2d 405].) If a jury is ordered the procedure is the same as in an ordinary civil action. (18 R.C.L. § 313, p. 355; 35 Am.Jur., §§ 373, 374, pp. 112-113.) The provisions of code sections 1084 to 1097 are applicable to any petition for this writ.

The foregoing determines that the superior court directly by statute had jurisdiction to review an act of the commissioner denying a license (Ins. Code, § 1734) in a mandate proceeding (*Drummey* v. *State Board of Funeral Directors, supra*) to pass upon the issues presented, and was empowered to empanel a jury. In *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304], the Supreme Court said (p.

796): *"First, the petitioner comes before the court governed by the provisions of the Code of Civil Procedure applicable to mandamus proceedings (Code Civ. Proc., secs. 1084 to 1097 inclusive). In the disposition of such proceedings the court is likewise governed* by those code sections." (Italics added.)

In passing it may be well to say that the commissioner, on the application to the Supreme Court for the writ, vigorously contended that the impanelment of a jury in this proceeding was without legal authority. This contention has been abandoned on appeal. The commissioner is now content to claim that the issues submitted were *in excess of jurisdiction;* in brief, that there was error. As bearing upon this question the findings of the commissioner may be examined and considered as points raised on appeal.

The commissioner made a finding, and assigned it as a reason for the refusal of the application for the license, to the effect that on a previous application, which was denied, "no action of any nature to review said denial of said application was commenced within three months after the date" of the order denying the application upon the ground that McDonough "was not of good general reputation." The subject of reputation will be considered later.

There is no statutory provision that the Insurance Commissioner in his official capacity as head of the administrative body may deny an application because after a previous denial there was no attempt to "review" the proceeding in a court of record. The failure to appeal from a prior order is not enumerated in either section 1805 or 1731 of the Insurance Code as a ground for refusing a license and therefore, insofar as the particular sections are concerned, refusal on that ground is in excess of the jurisdiction of the commissioner. However, there is a section which provides in substance that before an applicant is entitled to follow his previous business "it must be made to appear" *to the commissioner* that the applicant is a fit and proper person to have a license. (Ins. Code, § 1806.) Assuming that under this broad provision the commissioner could take into consideration as one of several although not the sole reason, the failure to apply for an appropriate writ after a ruling by him as a ground for refusal of a subsequent application, may it be contended that such ground could be entitled to any weight if the commis-

sioner did not permit the applicant *to explain why* several years before he had failed to carry the matter to a court of record, and why, in view of that failure, he now reapplied for a license?

The reason why no action was taken appears plainly from the historical background of the McDonough and other cases which appears directly in the record or by reference to previous litigation. The Drummey case determined that an applicant for a certificate or license after hearing before a board or a commission was entitled to the "independent judgment on the facts" "assisted by the findings of the board." Three months later in *McDonough v. Goodcell* it was determined that the Drummey rule applied to licensees only and not to applicants. Why should McDonough seek a review of a purely factual question when it had been announced that he could not have the benefit of the independent judgment of the court?

Three years later it was decided that an independent judgment on the facts was not only appropriate but that "any material evidence *regardless of the record of the proceedings* before the board" should be received on a hearing of a writ of mandate. (Italics added.) (*Laisne v. California St. Board of Optometry, supra.*) Though the Supreme Court has original and exclusive jurisdiction in Bar Association cases involving "applicants," that body has considered the evidence. In the present case the superior court had jurisdiction. (Ins. Code, § 1734.) The Supreme Court has not adopted the Goodcell rule as suitable to applicants under the State Bar Act. The change of "rules" as set forth in the Supreme Court opinions, the difference of opinion as expressed in the four-three votes, the change of court personnel, may or may not have contributed to the present effort of McDonough to obtain a license.

That confusion has existed appears from the opinion in *Dare v. Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304]. In that case the definition of trial de novo was explained (pp. 779-780) as follows: "As above noted the trial court is not confined to the record before the board. Nor is the court bound by the findings and determinations of the board. It must also be said that neither party is necessarily bound in all particulars by the record before the board." Whether a court may or *must* exercise independent judgment

on the facts is still open to question in view of the change of definition of trial de novo. In *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425], Mr. Justice Schauer expresses himself as follows (p. 144): *"The complete trial de novo doctrine of the Laisne case had been abandoned.* By the decision in the Dare case (*Dare* v. *Board of Medical Examiners, supra,* [21 Cal.2d 790] ) the majority of the court has receded from the extreme position taken in the Laisne case with respect to the right of a party to a complete trial de novo on mandamus review, and has thereby substantially rectified perhaps the most serious of the practical difficulties suggested in the dissenting opinion in the Laisne case as bound to be encountered in practice under the majority rule as then stated." It is also suggested that the problem of review of administrative decisions should be referred to the Legislature.

In December, 1944, the Judicial Council of the State of California, whose members are selected from the most eminent jurists in the state, including the distinguished and capable Chief Justice Gibson and the able and experienced senior Associate Justice Shenk, filed a report addressed to the governor of the state. Relative to administrative agencies the council recommends certain changes in the law, including the proposal that "the case shall be heard . . . without a jury." Evidently this is consonant with the latest expression of thought on trial de novo and recognition of the fact that a court created method of review may not control the rules of evidence and procedure against the plain provisions of the statute. (Code Civ. Proc., § 1090.) "Provision is made for the cases in which the court has the power to exercise an independent judgment on the evidence and also for the cases in which the court merely examines the record to ascertain whether the decision is supported by substantial evidence." The appendix to the report (pp. 141-142) contains the following: "The extent of the court's power to take evidence in addition to that presented before the agency has varied from case to case in recent years· *(Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848] ; *Laisne* v. *[California] State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457] ), and some differences still exist as indicated by recent District Court of Appeal decisions *(Wyatt* v. *Cerf,* 64 Cal.App.2d 732 [149 P.2d 309] ) and concurring

and dissenting opinions in Supreme Court cases *(Laisne* v. *[California] State Board of Optometry, supra; Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304]; *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425]; *Russell* v. *Miller,* 21 Cal.2d 817 [136 P.2d 318].)'' If there is confusion recognized by members of the judicial council, an applicant should not be penalized if he was unable to determine his proper remedy.

Take another step and assume that the commissioner could still hold that had McDonough been given a hearing the statute of limitations as to the appeal from a former hearing must be strictly construed. Not so. Recently Mr. Justice Traynor, learned in principles of law, held that the running of the statute of limitations may be suspended for other reasons than those enacted into statutory form by the Legislature and that the Supreme Court, and I assume an intermediate appellate court, ''is not powerless to formulate rules of procedure where justice demands.'' *(Bollinger* v. *National Fire Ins. Co.,* 25 Cal.2d 399, 410 [154 P.2d 399].) This is such a case. It may be remarked that murderers and thieves are freed from the state penitentiary to enter new walks of life, and that lawyers released from the state prisons return to honorably conduct their practice of the law. Surely a more severe test of ''character'' should not be demanded of one applying to conduct a business of bail bond broker than of one to practice the profession of the law.

The consideration of the finding that respondent is not a fit person to hold a license is appropriate at this time. The commissioner found that ''the undersigned Insurance Commissioner is not satisfied that. . . . The applicant is a fit'' or ''proper person to hold the license applied for.'' Also, that the ''records and acts of the Insurance Commissioner and of the Courts of this State'' indicated ''a lack of integrity'' on the part of McDonough. Upon these former findings the commissioner found that the applicant is not a fit and proper person to be granted a license.

The evidence to which the commissioner refers is the evidence heard before the commission in the month of October, 1937, and which he reconsidered as grounds for denial in October, 1942, a few days less than *five years thereafter.*

The finding—in effect that the commissioner was not satisfied, etc.—may be sufficient if the basic finding is sufficient.

The right of a commissioner to be satisfied has been upheld but ''There must exist facts which reasonably justify his conclusion that the applicant is not of good character and reputation. If such facts do not exist, it is his duty to issue the license and this duty can be enforced by the courts.'' (*Riley* v. *Chambers,* 181 Cal. 589, 595 [185 P. 855, 8 A.L.R. 418]. This case is quoted with approval in *McDonough* v. *Goodcell, supra.* In the absence of respondent the only ''facts'' found are the data referred to as the previous ''acts'' of the courts and the commissioner.

The court case referred to by the commissioner as holding that respondent was an unfit person to hold a license does not so hold. It holds merely that the evidence introduced at a hearing before the commissioner was sufficient to sustain a finding that there was unfitness to hold a license. In this respect the commissioner failed to note that ''Unquestionably the testimony before the commissioner would sustain a conclusion either way upon the issue of the good moral character and fitness of the petitioners to engage in the bail bond business in San Francisco. If the trial had been before a court the evidence was sufficient to support findings either way or was sufficient to support a verdict either way on the issue.'' (*McDonough* v. *Goodcell, supra,* at p. 749.) However, in *McDonald* v. *State Bar, supra,* the court weighed the evidence and reversed the board.

That portion of the finding in the present proceeding to the effect that respondent is not a proper person now because he was previously so adjudged by the commissioner has reference to a previous refusal of the former application as follows: ''[T] hat said Order of Denial was based on the grounds that said Peter P. McDonough was not of good general reputation, [and] had heretofore been refused a license.'' In brief, each of the several denials was based in whole or in part upon a previous denial, which brings the consideration to the facts related in the Goodcell case.

I have no desire to elaborate on the infirmities of ''reputation'' evidence. It is sufficient to say that in the Goodcell case the court said that a conclusion either way could be sustained. Under such circumstances the factual question of reputation was properly before the superior court in this mandamus proceeding. It was an issue, raised by the pleadings, essential to the determination of the substantial rights of the

parties. (Code Civ. Proc., § 1090.) It was proper to submit this factual question to the jury. The lone commissioner is not in a better position to "exercise an independent judgment" upon *facts* than twelve jurors. If a jury in deciding substantially the same question relative to the character of an applicant should decide contrary to the view held by the commissioner, it would be in effect a finding that the commissioner had abused the discretionary powers given him by the provisions of the statute. In this case there is evidence of McDonough's good character covering a period of thirty years or more, and there is other evidence of good character confined to the time after the denial of the previous application, covering a period of two years. In this case two trial judges refrained from setting aside such verdict.

There is no claim made by the commissioner on appeal that the verdicts of the jury upon which the judgments rest are in any way wanting in evidentiary support. In the inception of the proceeding the commissioner was directed to issue a license or to show cause why he had not done so. He filed a demurrer and an answer. In the answer it was alleged that McDonough was not entitled to a hearing "either by a jury or by the court," and the allegation that he was "a man of good character and good business status and reputation, and is financially responsible to a substantial degree" was denied, thereby raising an issue upon the questions of fact, which the trial court submitted to a jury.

Whatever the position of the commissioner on petition for a writ of prohibition might have been which is res judicata on jurisdictional questions, on appeal he does not claim that petitioner was not entitled to a court hearing. He has receded from his original position that as an applicant McDonough was not entitled to the independent judgment of the court or that McDonough was not entitled to a trial by jury on proper facts. It is now the commissioner's contention that the superior court judicial review should have been limited to whether a prior application had been denied within five years and whether there was an abuse of discretion in denying a hearing or denying the application for license. The commissioner also contends that if the provision in subdivision (c) of section 1733 is unconstitutional, it was the duty of the superior court to send the matter back to the commissioner for a hearing. This point has been previously considered. Since the enact-

ment of section 1821 it is not necessary to do anything more than declare that under the code sections as now read together *(Newport* v. *Caminetti, supra),* a petition of an applicant may not be denied without a hearing. It was the commissioner's duty under the terms of the alternative writ of mandate to issue the license or to show cause why he had not done so. He could have submitted to the jury the facts upon which he based his conclusion. He refused to do so. He should abide the result of the judgment based upon the verdict. In passing it should be noted from previous litigation referred to by the commissioner, and from more recent litigation, that when McDonough appeared before a jury in an extraordinary proceeding, matter or in a criminal case based upon the "license" question, McDonough won, and when the matters of "license" appeared before the commissioner, the commissioner won. In his opening brief the commissioner states his position as follows: "[W]here the Commissioner denies the application upon the ground that the applicant is not of good general reputation—the reviewing court must determine whether there is sufficient evidence to show a reasonable basis for the Commissioner's action." The reviewing court here was the superior court. The commissioner refused to introduce evidence to support his position. He did not participate in the examination of witnesses, but his legal representative was present during the jury trial, and participated in motions and objections in the absence of the jury. A certificate of the commissioner certifying facts found after a hearing is held to be prima facie evidence of such facts. (Ins. Code, § 1819.) Here there was no hearing.

Whatever has been said in reference to respondent Peter P. McDonough in Civil No. 12638 applies also to respondent Thomas McDonough, Civil No. 12639. As I view the facts and the law the commissioner has put himself in such a position that the judgment of the superior court should be affirmed.

Respondents' petition for a hearing by the Supreme Court was denied May 10, 1945. Carter, J., and Schauer, J., voted for a hearing.